[Civ. No. 16067. Second Dist., Div. Three. July 9, 1948.]

FRANCES D. HORTON, as Executrix, etc., Respondent, v. CITIZENS NATIONAL TRUST & SAVINGS BANK OF LOS ANGELES (a National Banking Association) et al., Appellants.

Cosgrove, Clayton, Cramer & Diether for Appellants.

No appearance for Respondent.

SHINN, Acting P. J. — This is an action for declaratory judgment which affects the rights of all of the owners of lots in Tract 9038, in the county of Los Angeles, a residential subdivision comprising some 93 lots. The action was instituted by C. C. Horton, one of the lot owners. He has since deceased and Frances D. Horton has been appointed as executrix. An order of substitution has been applied for and made, but our references will be to Mr. Horton as plaintiff. The court is advised by counsel who represented the plaintiff at the trial, that they have been instructed that the executrix has employed other counsel and does not wish to defend the appeal. Consequently, no brief has been filed on behalf of the respondent.

The tract is restricted under a declaration recorded by the owners many years ago pursuant to which all of the lots have been sold and titles conveyed subject to the restrictions. The paragraph of the declaration here involved provides for the appointment of a Board of Architecture composed of three members, which board is vested with the authority to approve or disapprove plans, specifications and color scheme for any building constructed in the tract, and further authority to approve or disapprove any changes in the exterior of residences, the destruction of trees, and the installation or alteration of fences, walls, poles and other structures in the tract. No building or other structure may be erected on any of the lots until plans therefor have received the written approval of the Board of Architecture. The matter in controversy here is whether the members of this board are to be selected by the present lot owners with the consent and approval of the Citizens National Trust and Savings Bank of Los Angeles, or whether the bank alone is authorized to appoint the members. Plaintiff contends for the former construction of the declaration of restrictions and he alleges in his complaint that the issue raised is one of common and general interest to all of the lot owners and that he therefore brings this action on their behalf and for their benefit, alleging that they are more than 100 in number and that it is impracticable to bring them all before the court.

The essential facts giving rise to the controversy are the following: In 1924, one W. S. Sparr, who then owned the acreage now comprising Tract 9038, conveyed the same to Citizens Trust and Savings Bank, a state bank, which later, through merger and consolidation, became Citizens National Trust & Savings Bank. The bank issued a declaration of sub-

division trust, with Sparr as sole beneficiary, and at the same time loaned Sparr certain money which was secured by the terms of the declaration. In 1930, Sparr and the bank conveyed their respective beneficial interests in the trust to Land Corporation Company, Limited, and a new declaration of trust was issued by the bank with the Land Corporation as sole beneficiary, under which latter declaration the bank continued to sell and convey lots, and later a third declaration was issued with the Land Corporation as sole beneficiary. In 1940, Land Corporation assigned to the bank its entire beneficial interest, thereby authorizing the bank as owner to terminate the trust, which the bank proceeded to do. Some three months before the institution of the present action the bank sold the last of the unsold lots.

The controlling provision in the declaration of restrictions with relation to the appointment of the Board of Architecture requires that plans, etc., be submitted to ''a Board of Architecture composed of three members to be appointed by W. S. Sparr or his successors in interest, with the consent and approval of the Citizens National Trust and Savings Bank of Los Angeles.'' At the time the declaration was executed, Sparr, as we have said, was the owner of the entire beneficial interest in the trust which eventually passed to the bank, and the question is whether the several lot owners are his successors in interest, or whether the bank is his successor in interest, within the meaning of the declaration. The judgment of the trial court declares that the lot owners are the successors in interest of Sparr, sets up a scheme for an election by the lot owners of members of the Board of Architecture and restrains the present members from acting as the board after an election has taken place.

Defendant bank and the individual members of the architectural board now serving, who are named as defendants, appeal from the judgment. They contend that upon the undisputed facts the action was not one that could be prosecuted by plaintiff on behalf of all lot owners and that the judgment, based upon findings that it is a representative action, is wholly erroneous and in excess of the court's jurisdiction. There are other defenses, but the conclusion we have reached with reference to the first one is that the action should not have been tried without bringing in, as parties plaintiff or defendant, all of the other lot owners.

■ The equity rules which are applicable to this situation are stated in two sections of the Code of Civil Procedure. They read as follows: Section 382. "Of the parties to the action, those who are united in interest must be joined as plaintiffs or defendants; but if the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint; and when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." Section 389. "The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties, the court must then order them to be brought in, and to that end may order amended and supplemental pleadings, or a cross-complaint to be filed; and summons thereon to be issued and served. And when, in an action for the recovery of real or personal property, or to determine conflicting claims thereto, a person, not a party to the action, but having an interest in the subject thereof, makes application to the court to be made a party, it may order him to be brought in, by the proper amendment." These sections, when read together and applied to the facts of the case, present the following questions: (1) Are all the lot owners united in interest; (2) have they a common interest; (3) could the controversy be determined without prejudice to the rights of those who were not parties to the action or by saving their rights. Unless all these questions may be answered in the affirmative, it is necessary that all the lot owners be brought in as parties. We shall see that the several questions call for negative answers.

■ It will appear from a statement of the admitted facts that the contest here is in reality not one between the owners and the bank, but between different groups of owners, and that numerous owners whom plaintiff assumes to represent are his real adversaries as to the matters in issue.

It was alleged in the answer and developed in the evidence that there is a controversy among the lot owners themselves as to how the tract may be improved, which underlies the dispute as to the power, whether of the lot owners or the bank, to name the members of the board. Twenty-three two-story houses had been built in the tract, five one-story houses

had been completed, two more were nearly completed at the time of the trial, and 65 of the lots had not been improved. It was in evidence that several months before the institution of the present action plaintiff herein, and five other lot owners, filed an action against the bank and the members of the architectural board seeking damages of $30,000 and injunctive relief based upon the approval by the board of plans and specifications for the construction of one-story residences in the tract. It was alleged in the complaint in that action that a member of the board, one of the bank's employees, had represented to plaintiff Horton before he purchased a lot and built his two-story residence that the Board of Architecture would approve plans for only two-story residences, and would construe paragraph V of the declaration as granting it authority to disapprove all other plans under the provision which gave it power to maintain uniform exteriors and physical appearances of the houses in the tract. It was alleged that plaintiff Horton, relying upon the representations, had purchased a lot and constructed a two-story house, that the board had approved plans for a one-story residence in the tract, that the same was under construction and that plaintiff Horton had been damaged in the sum of $30,000. Injunctive relief was sought restraining the board from permitting or allowing single story residences to be constructed in the tract. Shortly after the present action was filed the plaintiffs in the former action caused the same to be dismissed. The present complaint alleges that the members of the board ''may approve the erection of buildings on lots in said tract which will not maintain a uniform and reasonably high standard of artistic results in exteriors and physical appearance, to the irreparable harm of plaintiff and other owners of said lots.''

It is clearly apparent that there are two classes of lot owners in the tract, one consisting of the owners and advocates of only two-story residences, and the other, those who have built or wish to build one-story residences. Plaintiff obviously is not in a position to, and does not represent all owners of lots in the tract, but only those who would bar the erection of one-story houses. This group may, but does not necessarily include all of the owners of two-story houses, and in the absence of all evidence on the subject it is questionable whether it includes many of the owners of unimproved lots. Anyone who has given the slightest heed to the trend of residential construction in these times knows that restriction of im-

provements to two-story dwellings would indefinitely delay further development.

*Hansberry* v. *Lee,* 311 U.S. 32 [61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741], is in point. The court had under consideration the effect of a judgment which declared that some 500 parcels of land had been brought under a racial restriction agreement by the signatures of the owners of 95 per cent of the frontage. The restriction would have barred the ownership of any of the land by Negroes. The judgment had been rendered in what was claimed to be a representative action, on behalf of all of the landowners and it was contended that the petitioner Hansberry, a Negro, was bound by the adjudication, although he was not a party to the action. The court rejected the plea of res judicata for the reason that to give it effect would be to deny due process to those landowners who were not before the court and whose interests would be adversely affected by enforcement of the agreement. There could be no common class where enforcement of the agreement in favor of some would adversely affect the substantial interests of others. ''It is one thing to say that some members of a class may represent other members in a litigation where the sole and common interest of the class in the litigation is either to assert a common right or to challenge an asserted obligation. [Citing cases.] It is quite another to hold that all those who are free alternatively either to assert rights or to challenge them are of a single class, so that any group merely because it is of the class so constituted, may be deemed adequately to represent any others of the class in litigating their interests in either alternative. Such a selection of representatives for purposes of litigation, whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires. The doctrine of representation of absent parties in a class suit has not hitherto been thought to go so far.'' (*Hansberry* v. *Lee, supra.*) The holding of the court and the expressions we have quoted, furnish a complete answer to the contention that the plaintiff herein is prosecuting a representative action. He cannot be heard to say that he represents or sues on behalf of all the lot owners in the tract, when the interests of his group are in direct conflict with those of the remaining owners.

██ The third question stated above relates to the effect which the judgment has upon the rights of the other lot own-

ers. If no prejudice results to them the judgment may be allowed to stand, even though the case is not a proper one for virtual representation. But prejudice does result. The power to appoint the members of the Board of Architecture has been taken from the bank and conferred upon the lot owners and this has been done without affording all of them an opportunity to have their day in court on the question of construction of the agreement. It may be that control in the matter of appointing members to the board would be gained by a group of owners antagonistic to the construction of one-story dwellings, and that this group would select a board similarly disposed. While this result is only a possibility, it would be a serious one if it occurred, and the judgment does not guard against it. But there are other reasons why the judgment ignores the rights of the absent lot owners. They may have rights in the matter which are independent of, and do not rest upon, a construction of the agreement. Some of them may be in a position to invoke the doctrine of estoppel against those who seek to take from the bank the power of appointing the members of the board. From the commencement of the project the members have been selected by Sparr or Land Corporation with the consent of the bank, or by the bank alone. The lot owners have acquiesced in this procedure and by their conduct have given a practical construction to the terms of the agreement. Moreover, they have allowed it to appear that the powers to be exercised by the board would continue to be vested in a board appointed by the bank as a disinterested party. Those who have constructed one-story dwellings no doubt have anticipated that others would be allowed to do the same, and it may be that numerous owners have purchased their lots in the belief that other one-story dwellings would be permitted, or perhaps under assurance to that effect by the representatives of the bank, in connection with the sale of lots. The effect of the judgment is to foreclose the assertion of all such equitable rights. A complete determination of the controversy required the presence of all lot owners. There can be no just procedure directed by judgment which ignores the rights of any lot owner and adversely affects his interests without his having his day in court. For these reasons the bank could not be allowed to defend the action on behalf of all the lot owners. It did not attempt to do so and the judgment does not declare that it is defending on their behalf.

All the owners of lots in the tract were indispensable parties under the rules stated in *Bank of California* v. *Superior Court*, 16 Cal.2d 516 [106 P.2d 879]. The court there discussed the subject comprehensively, with full citation of authority. Anything further we might say on the question of indispensability of parties would only be a reiteration of what was said in the Bank of California case in expounding the law on that subject.

The judgment is reversed.

Wood, J., and McComb, J. assigned, concurred.