[Civ. No. 39145. Second Dist., Div. Two. Nov. 27, 1972.]

HARRIES K. HEBBARD et al., Plaintiffs and Appellants, v.
CHESTER WALKER COLGROVE et al., Defendants and Respondents.

1018

**COUNSEL**

Hutchinson & Irwin, James A. Irwin and Richard H. Hicks for Plaintiffs and Appellants.

Walter M. Gleason and Cressey H. Nakagawa for Defendants and Respondents.

**OPINION**

**COMPTON, J.**—This case reaches us on an appeal by the plaintiffs following a limited order of dismissal as to each of the causes of action contained in plaintiffs' third amended complaint. The limited order of dismissal followed the sustaining of a demurrer without leave to amend "insofar as said alleged causes of action and each of them purport or attempt to set forth a so-called 'class action.' "

The trial court, in addition to sustaining the demurrer struck from the complaint various allegations in support of the maintenance of a class

action. The trial court also sustained a special demurrer for uncertainty as to certain allegations of the complaint.

The order of partial dismissal eliminating the class action aspect of the case while sustaining the complaint as to the individual plaintiffs' claims is appealable as a final judgment. (See *Slakey Brothers Sacramento, Inc.* v. *Parker,* 265 Cal.App.2d 204 [71 Cal.Rptr. 269]; *Daar* v. *Yellow Cab Co.,* 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732].)

The individually named plaintiffs in this action are beneficiaries of two trusts. These trusts were created by defendant C. W. Colgrove and his wife Jennie D. Colgrove. The trustees are Colgrove's daughters—Helen Colgrove Wilcox and Janice Colgrove Whitehouse. These four individuals, all of whom are named defendants, are also beneficiaries of the trusts.

Briefly stated, the complaint charges that the trustees permitted their father Chester Colgrove to divert trust funds to his own benefit and to the benefit of his wife and daughters and that Mr. Colgrove has improperly used trust monies for financing private oil speculations, personal living expenses and for repaying personal loans. As a result, plaintiffs seek an accounting, removal of the trustees and the imposition of a constructive trust on the money alleged to have been diverted.

At issue on this appeal is the question of whether some of the beneficiaries of these trusts who have joined in this action as individually named plaintiffs may by the use of the class action device represent all of the beneficiaries of the trusts.

In 1969, litigation between two beneficiaries[1] of these trusts and the four above-named defendants concerning certain aspects of these trusts was before this court. The two plaintiffs in that action were claiming fraud on the part of the defendants in the creation of the trusts. In an opinion reported as *Ventura* v. *Colgrove,* 270 Cal.App.2d 136 [75 Cal.Rptr. 496], this court affirmed the trial court's finding that the action was barred by the statute of limitations. Reference to that case provides an expansive exposition of the factual background of the present litigation.

In the *Ventura* case, the defendants' moral vindication was not equal to their legal vindication and Mr. Justice Fourt in his dissent took occasion to remark that the result there reached was "legalism run riot" and suggested that he would "ventilate this case with a little fresh air." That ventilation has apparently been hard to come by. The original complaint

---

[1]Neither of these beneficiaries is named as an individual plaintiff in the present action.

in this action was filed in December 1967 and the case has yet to be tried on its merits.

It appears that C. W. Colgrove is a "wildcat" oil operator who solicits money from individuals to finance his ventures on the promise that he will repay from oil royalties.

In 1948, Colgrove together with his wife held an oil and gas sublease in the Cuyama Valley, California. This sublease covered approximately 160 acres. In 1948, Mr. Colgrove created three trusts. Trust No. 1 covered 70 acres in the east half of the referred to sublease. Trust No. 2 covered the remaining 10 acres of that east half. Colgrove sold for valuable consideration fractional interests in these trusts. Trust No. 3 covered the remaining 80 acres or the west half of the sublease and was entirely owned by the Colgrove family. This latter trust is not involved in this litigation. Trust No. 3, however, was involved in the case of *Ventura v. Colgrove, supra,* in that it was alleged in that case that Colgrove had misrepresented the lease as covering 80 acres and had concealed the existence of the additional 80 acres from the investors.

According to the terms of trusts 1 and 2 the beneficiaries were to receive a distribution of net income from the oil lease according to their proportionate interests.

In 1948, Mr. Colgrove created an entity known as the Cuyama Syndicate, an unincorporated association, and shares in this association were issued to various of his creditors. This association had a capitalization of 180,000 shares at par value of $1 per share. The association was named as a beneficiary of trusts 1 and 2 and as an entity is the owner of substantial beneficial interests in those trusts.

 We deal first with the court's ruling on the special demurrer for uncertainty inasmuch as the allegations involved form a background for considering the appropriateness of the class action.

Code of Civil Procedure section 906 provides in pertinent part: "Upon an appeal pursuant to Sections 904.1, 904.2 or 904.3, the reviewing court may review . . . any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party, . . ."

The specific allegations as to which the trial court sustained the demurrer are as follows: "10. At all times herein mentioned defendants Wilcox and Whitehouse, and each of them, have breached and abdicated their responsibilities and duties as Trustees of the Trusts in violation of

the Declarations of Trust and the rights of plaintiffs (and others having a beneficial interest under said Trusts) in that they have, *inter alia*: . . .

"e. Engaged in active dealings with defendants Colgrove and Jennie D. Colgrove hostile to the beneficiaries and the interests of the beneficiaries;

"f. Acquired interests adverse and contrary to the interests of the Trusts which have not been disclosed to the beneficiaries thereof; and

"g. Refused, upon demand by plaintiffs, to make an accounting with respect to the assets of the Trusts."

In determining whether allegations are defective on the grounds of uncertainty they must be examined in context and by looking to the complaint as a whole. (39 Cal.Jur.2d, Pleading, § 150; *Burckhardt* v. *Woods,* 124 Cal.App. 345 [12 P.2d 482]; *Hutchinson* v. *McNally,* 85 Cal. 619 [24 P. 1071]; *Whitehead* v. *Sweet,* 126 Cal. 67 [58 P. 376].)

Paragraph 12 of the complaint when read in context with the above mentioned allegations makes the claims of the plaintiffs clear, unambiguous and certain. Paragraph 12 reads as follows: "12. Plaintiffs are informed and believe and upon such information and belief allege that between the 10th day of April, 1948, and the commencement of this action defendants Wilcox and Whitehouse permitted defendant Colgrove to appropriate sums of money belonging to the Trusts and properly distributable to plaintiffs and the members of their class as the beneficiaries thereof, in an amount in excess of $100,000.00, to his own use and benefit and to the use and benefit of defendants Wilcox, Whitehouse and Jennie D. Colgrove. The exact amount and allocation of said sums between the Trusts is unknown to plaintiffs but is known to defendants and can be ascertained upon an accounting herein. The sums appropriated by defendant Colgrove have been used by him for personal living expenses and business ventures, in which neither the Trusts nor the beneficiaries have any interest, contrary to the terms of the trust instruments, including, among other, the following purposes:

"a. Commencing in or about 1955, defendants Wilcox and Whitehouse, as such Trustees, at the request and direction of defendant Colgrove, directed Richfield Oil Corporation, predecessor of Atlantic-Richfield Company, to pay from the royalties due the trusts the sum of $3,000.00 per month to the Republic National Bank of Dallas, Texas. Said monthly payments were for the personal account of defendants Colgrove and Jennie D. Colgrove, and were to continue to be made by Atlantic-Richfield Company until further notice. Atlantic-Richfield Company has paid such sums to

said Bank at Dallas, Texas, regularly from said time at least until in or about the month of July, 1967.

"b. Commencing sometime in or about the year 1961, and continuing thereafter until a time unknown to plaintiffs, defendant Colgrove expended funds of the Trusts for the purposes of prosecuting an oil speculation known as the 'Tepusquet Canyon Project,' in Santa Barbara County, State of California. In furthering this speculation, defendant Colgrove secured certain oil and gas leases on the property involved and caused them to be transferred to a corporation known as the 'Tepusquet Oil Corporation.' The shares of stock were issued for said corporation to defendant Wilcox, as Trustee thereof. The beneficiaries of said Trust which holds said stock are defendants Colgrove, Jennie D. Colgrove, Wilcox and Whitehouse and other members of defendant Colgrove's family. Plaintiffs' and the members of their class, have no interest therein.

"c. To repay personal loans of defendants Colgrove and Jennie D. Colgrove.

"d. To pay personal living expenses of defendants Colgrove and Jennie D. Colgrove."

The sustaining of the special demurrer was error.

### THE CLASS ACTION FEATURE OF THE COMPLAINT

Plaintiffs plead in Paragraph 8 of their complaint as follows: "8. There are approximately fifty individuals, excluding members of Cuyama Syndicate, who are beneficiaries, either vested or contingent, of the Trusts, all of whom are interested in the subject matter of this action in the same manner as plaintiffs, except for the quantum of their respective interests in the Trusts. There are approximately one hundred beneficiaries of the Trusts through Cuyama Syndicate who are identically interested in the subject matter of this action, except for the quantum of their respective interests. Said persons reside throughout the United States, are in many instances elderly and without sufficient funds to protect their interests, and require representation in this action so that their rights and interests in the Trusts may be protected. Said beneficiaries are so numerous and diversely situate as to make it wholly impracticable, if not impossible, to bring them all before the Court in this action. The object of this action is the adjudication of claims and rights which do or may affect specific property involved in this action, to wit, the corpus and income of the Trusts, and a community of interest exists between plaintiffs and the members of the class described herein as to questions of law and fact involved,

in that the principal object of this action is to secure an accounting of the affairs of the Trusts and to recover for and on behalf of the Trusts money which has been wrongfully diverted therefrom. The interests of the members of the class are in some instances small, could not be vindicated without resort to repeated litigation with respect to the same issues, and their representation herein is necessary to prevent a failure of justice, as more particularly hereinafter appears. The interests of the members of said class and plaintiffs are identical except for the quantum of their beneficial interest in the Trusts, and the named plaintiffs herein will fairly insure adequate representation and protection on behalf of all of such beneficiaries. Accordingly, it is necessary to maintain this action as a class action on behalf of the beneficiaries of the Trusts, whether their interests are derived as named beneficiaries of the Trusts, or through their beneficial interests in the so-called Cuyama Syndicate."

The requirements of a class action are (1) there must be an ascertainable class, and (2) there must be a well-defined community of interest in the questions of law and facts involved, which interest affects the parties to be represented. (*Daar* v. *Yellow Cab Co., supra,* at p. 704; Code Civ. Proc., § 382.)

### Is the Class Ascertainable?

It seems patently obvious that the beneficiaries of trusts 1 and 2 are an ascertainable class. It is further obvious that the shareholders of the Cuyama Syndicate are an ascertainable class.

We conclude, however, that the latter group is not properly a part of a class to be represented as such by the plaintiffs in this action. The Cuyama Syndicate, as an entity, has been properly made a defendant in the action. As an entity, it is a beneficiary of the trust. The shareholders in the Cuyama Syndicate are not direct beneficiaries of the trusts. However, the complaint contains the proper allegations to permit the action to be brought as a derivative suit and the Syndicate as an entity is in turn a member of the class designated as beneficiaries of trusts 1 and 2. This conclusion, however, makes little practical difference in the result. Its only effect is to measurably reduce the size of the class which in this case is not fatal to the maintenance of a class action.

### Are There Common Questions of Law and Fact and a Unity of Interests Among Members of the Class?

It cannot be gainsaid that beneficiaries of an express trust share a common interest in the fidelity of the trustees and the proper distribution

of trust income due to the beneficiaries. At this juncture it would appear that there is pleaded an ascertainable class with an ostensible community of interest and that the matter involves common questions of law and fact. The complaint further pleads allegations which are admitted by the demurrer to be true pointing to the practical necessity for resort to a class action.

### THE REQUIREMENT OF JOINDER OF PARTIES

Before examining in detail the defense contentions concerning the impropriety of a class action we first look at some general principles of law concerning necessary and proper parties in actions involving trusts.

Throughout the pleading stages in this case defendants have insisted that all beneficiaries are necessary parties to the action and must be joined before the trial court has jurisdiction to proceed. Plaintiffs on the other hand have pleaded facts which cry for relief. Defendants are fully advised of the plaintiffs' claims and the issues at stake. Plaintiffs should not be prevented from reaching the merits of this matter by procedural obstacles which amount to "legalism run riot."

■ " 'A person is an indispensable party to an action if his absence will prevent the court from rendering any effective judgment between the parties or would seriously prejudice any party before the court or if his interest would be *inequitably affected or jeopardized by a judgment rendered between the parties.'* . . .

■ " ' "It is the general rule in equity, continued in force by the provisions of the Code of Civil Procedure (§ 389), that all who are interested in the subject matter of a litigation should be made parties thereto, in order that complete justice may be done, and that there may be a final determination of the rights of all parties interested in the subject matter of the controversy." ' " (*U-Tex Oil Co.* v. *Pauley,* 209 Cal.App.2d 88, 94-95 [25 Cal.Rptr. 790].) (Italics added.)

■ Where a number of persons have undetermined interests in a trust fund and one of them, *acting adversely to the others, seeks to recover the whole, to fix his share, or recover a portion claimed by him,* the other persons are indispensable parties. (See *Bank of California* v. *Superior Court,* 16 Cal.2d 516, 521 [106 P.2d 879].)

"Exceptions have been made to this rule where, by the terms of the trust, or from the nature of the suit, the trustee himself fully represents the *cestuis que* trust, where the beneficiaries are so numerous as to make it difficult or impracticable to make them all parties, where the beneficiaries

cannot be located, or where the relief sought in no way affects the relationship of the trustee with them, . . ." (90 C.J.S., Trusts, § 366, p. 670.)

"[T]here are two well-established exceptions to the general rule that the *cestuis que trustent* are necessary parties in actions by or against a trustee relating to the trust or its property. *The first is where the absent parties are properly represented.* . . . *The second exception to the general rule arises where the beneficiaries are very numerous, so that the delay and expense of bringing them in becomes oppressive and burdensome.* In such case they will not be deemed necessary parties where the trustee representing them is made a party." (*Anderson* v. *Elliott,* 1 Ill.App.2d 448 [117 N.E.2d 876, at p. 879].) (Second italics added.)

The basic purposes underlying the rule requiring joinder of beneficiaries as indispensable parties in an action against trustees are (1) to protect the trustees against a multiplicity of actions, and (2) to see that all beneficiaries are adequately represented.

Furthermore in California "It is settled that one of the beneficiaries may properly maintain a representative action on behalf of the others with respect to such matters as *appointing a receiver, removing trustees, compelling an accounting and impressing a trust upon property purchased with trust money.*" (*Bowles* v. *Superior Court,* 44 Cal.2d 574, at p. 587 [283 P.2d 704].) (Italics added.) (Also see *Weygandt* v. *Larson,* 130 Cal. App. 304, 308-309 [19 P.2d 852].)

It would thus appear that in the case at bar and in light of the relief sought, all beneficiaries, while they are proper parties are not indispensable. Plaintiffs do not seek a share of the money adversely to the other beneficiaries.

On the other hand; applying the principles stated above it also appears that whether they are indispensable or only proper parties, a class action is well suited to the purpose.

It is to be assumed that should this matter proceed as a class action, the members of the class will receive notice and be given an opportunity to participate or withdraw from the action as they desire. In view of the broadened concept of jurisdiction as enunciated in section 410.10 of the Code of Civil Procedure that "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States," either a class action or the compulsory joinder of indispensable parties as nominal defendants reaches a comparable result. No greater benefit inures to the absent beneficiaries or the defendants under the latter procedure than under the former.

The notice would be adequate to bind the absent beneficiaries and thus eliminate the possibility of a multiplicity of actions while at the same time the representation of those beneficiaries would be adequate to protect their interests.

## DEFENSE CONTENTIONS

The defendants' first and principal attack upon the maintenance of a class action is that the class is divided into two factions which are opposed in their desire to press forward with the plaintiffs' action. The existence of this division is claimed by defendants to (1) eliminate the existence of the community interest, and (2) to reduce the number of plaintiffs who desire to proceed below a number which would require a class action as a practical necessity.

Secondly, defendants claim that the matter cannot be maintained as a class action because some of the defendants are members of the class sought to be represented.

Thirdly, defendants assert that the allegations of the complaint tolling the statute of limitations rest upon claims of fraudulent misrepresentation by the defendants which resulted in a concealment of the existence of the cause of action. In this latter connection defendants contend that each plaintiff then must proceed individually to establish the false representations that were made to him and his reliance thereon. We dispose of this last contention first as it is completely answered by *Vasquez* v. *Superior Court,* 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964], and *Collins* v. *Rocha,* 7 Cal.3d 232 [102 Cal.Rptr. 1, 497 P.2d 225]. In each of those cases it was established that an action based upon fraudulent misrepresentation can be maintained as a class action. A fraudulent representation, like any other fact, can be established by circumstantial or indirect evidence. A complaint based on this theory is not subject to a demurrer even though it might ultimately turn out that plaintiffs are unable to prove the fraudulent misrepresentations as to each of the members of the class.

 We turn now to defendants' principal argument. In order to establish the existence of the two discordant factions among the members of the alleged class, defendants ask that we take judicial notice of an action filed in the United States District Court on April 8, 1965, by Joseph Ventura and Walter E. Fowler against Mr. and Mrs. Colgrove and their daughters. (Ventura and Fowler are the same persons who were plaintiffs in the state action of *Ventura* v. *Colgrove, supra.*)

Code of Civil Procedure section 430 provides in pertinent part: "The

defendant may demur to the complaint within the time required in the summons to answer, when it appears upon the face thereof, *or from any matter of which the court must or may take judicial notice, either . . .* [specifying the various grounds]." (Italics added.)

The federal action was originally filed as a class action pursuant to rule 23c(1) of the Federal Rules of Civil Procedure.

A notice of the pendency of a class action was sent to beneficiaries of the trust and it appears that a number of them formally intervened in support of the position of the defendants. We note, however, that the issues in the federal case were not identical to the issues in the instant case. Furthermore, this situation appears to be comparable to *Fanucchi* v. *Coberly-West Co.,* 151 Cal.App.2d 72 [311 P.2d 33]. There in a class action for fraud by a group of agricultural growers, affidavits were filed indicating that some of the growers did not feel they had been defrauded. The court observed at page 82 that ". . . the statement of these growers that they now know that a formula was used, and that they do not claim fraud in the use thereof, does not show that they waived their other rights, that they do not want to be paid, or that they are unwilling to be a part of the class for the benefit of which the suit was brought. *If they do not want to be paid they need not claim their share of any recovery which may result, but they may not thus defeat the right of the remaining growers to maintain a class action the members of which would still be definitely ascertainable.*" (Italics added.)

Defendants cite us to a number of cases involving varying factual situations which hold that a class action is improper when members of the purported class occupy divergent positions. The principal cases thus cited are *Horton* v. *Citizens Nat. Trust & Savings Bank,* 86 Cal.App.2d 680 [195 P.2d 494], and *Hansberry* v. *Lee,* 311 U.S. 32 [85 L.Ed. 22, 61 S.Ct. 115, 132 A.L.R. 741].

In *Hansberry,* at pages 44-45 [85 L.Ed. at page 28], the United States Supreme Court analyzed the problem as follows: "It is one thing to say that some members of a class may represent other members in a litigation where the sole and common interest of the class in the litigation is either to assert a common right or to challenge an asserted obligation. [Citations.] It is quite another to hold that all those who are free alternatively either to assert rights or to challenge them are of a single class, so that any group, merely because it is of the class so constituted, may be deemed adequately to represent any others of the class in litigating their interests in either alternative. Such a selection of representatives for purposes of

litigation, whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, *does not afford that protection to absent parties which due process requires.* The doctrine of representation of absent parties in a class suit has not hitherto been thought to go so far." (Italics added.)

The thrust of that language and the theme of *Horton* and others is that maintenance of a class action is rendered improper if it appears that members of the class would not be adequately represented or that any recovery by the named plaintiffs on behalf of the class would actually be *adverse* to the interests of some members of the class.

In the present case, if a divergence exists as contended by defendants, that divergence is not as to the interest sought to be vindicated but only in the desire to proceed or belief in the culpability of the defendants. Clearly, if the named plaintiffs can establish that the beneficiaries are entitled to recoup money that has been misappropriated, such recovery would not be adverse to any members of the class sought to be represented. On the contrary, their interests will have been well represented even though they may, if and when that time arrives, forego their share of the recovery. We suspect that the likelihood of that latter eventuality is remote indeed.

Defendants claim that the elimination of those beneficiaries who have already indicated their desire not to participate reduces the number of remaining beneficiaries below that where a class action would be appropriate. We disagree. First, as we have stated, these beneficiaries cannot be eliminated at this state of the proceeding. Secondly, there is no set number required as a matter of law for the maintenance of a class action. In *Bowles* v. *Superior Court, supra,* which was approved as a class action, there was a total of 10 beneficiaries at the time of the commencement of the action.

In a memorandum of decision concerning the second amended complaint the trial court in this action stated that "It seems to be settled beyond dispute that there are no more than 10 beneficiaries in Trust No. 1 and something less than 40 beneficiaries in Trust No. 2. In fact, counsel for defendants asserts that there are only 10 beneficiaries in Trust 1 and 18 in Trust No. 2." Taking defendants' figures there are a minimum of 28 members of the proposed class.

Nor do we think it is significant that the named defendants in this action are also members of the class sought to be represented.

Defendants assert that a class action is oppressive to the remaining

unnamed beneficiaries in that they are being "dragooned" into a lawsuit in which they have no interest. Of course, it is always a possibility that in a class action persons will be dragged into a lawsuit in which they do not care to participate. However, such a concern on the part of defendants is particularly inappropriate here in view of the defendants' demand that all of the remaining beneficiaries be joined as parties. Defendants cannot have it both ways.

Finally, in summary, the following language from *Daar* v. *Yellow Cab Co.*, *supra*, 67 Cal.2d 695, 709, is applicable to defendants' contentions.

"*A determination of the interest of each member of the class in any damages recovered does not seem to us dissimilar to a determination of each member's interest in a common trust fund, such determination sometimes being required after the common issues have been resolved in a class action.* Only at such final stage do the individual interests become critical and does the community of interest requirement lose significance. '*It is not unusual for class actions to involve such subsidiary questions wherein individual creditors or groups thereof contest issues among themselves after common questions as to basic liability have been settled.*'" (Italics added.)

The trial court's order sustaining the general and special demurrers and the order of dismissal are reversed. The various allegations ordered stricken by the trial court are reinstated.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied December 13, 1972, and respondents' petition for a hearing by the Supreme Court was denied January 24, 1973.