[Civ. No. 47885. First Dist., Div. Two. Dec. 18, 1981.]

FRANK ROSE et al., Plaintiffs and Appellants, v.
CITY OF HAYWARD et al., Defendants and Respondents.

**Counsel**

Duane W. Reno and Davis, Cowell & Bowe for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Eleanor Nisperos, Deputy Attorney General, John W. Scanlon, City Attorney, and Myron A. Johnson, Assistant City Attorney, for Defendants and Respondents.

---

OPINION

MILLER, J.—This is an appeal by retired public employees from a judgment denying a petition for writ of mandate seeking an order compelling the City of Hayward and the Public Employees Retirement System (hereinafter PERS) to include certain "fringe benefits" in the salary base from which their pension allowances are computed. Appellants also appeal from an order entered by the trial court denying certification as a class action.

The parties have stipulated to the facts of the case. We summarize the relevant facts from that stipulation. The named plaintiffs in this action are a retired police officer and a retired fire fighter and the widows of a deceased police officer and a deceased fire fighter formerly employed by the City of Hayward. Named petitioners have vested pension rights and at the time they filed their petition, were receiving monthly pensions from PERS (the System).

During their tenure with the City of Hayward, both the fire fighters and police officers received an annual uniform allowance, holiday pay, and/or lump sum payment for unused sick leave time. The police officers also received an ammunition allowance.

Pursuant to the state retirement law, by which the city agreed by written contract to be bound, respondent PERS administers the city's pension plan for the police officers and fire fighters (local safety members). In calculating retirement benefits for appellants, respondent PERS did not consider the local safety members' uniform allowances, ammunition allowance, holiday pay and lump sum unused sick leave pay as part of their "final compensation," a factor used in PERS' service retirement formula.

Appellants filed their petition for a writ of mandate on December 22, 1976, to compel PERS to include the "fringe benefits" in its calculation of the pension benefits. Appellants did not seek an administrative hearing with PERS prior to instituting the action. PERS and the City of

Hayward demurred to the petition on the ground that the court lacked jurisdiction because appellants did not exhaust their administrative remedies. Respondent City of Hayward also demurred on the ground that no cause of action was stated against the city. The trial court overruled those demurrers on January 31, 1977.

On March 28, 1977, appellant moved for class action certification. Respondents PERS and the City of Hayward objected to certification, but stipulated that liability be determined prior to determination of class maintainability. Thereafter, the trial court held that the annual uniform allowance should be included in the computation of pension benefits, but that holiday pay, ammunition allowance and cash payment upon retirement for unused sick leave should be excluded. At the same time, the trial court ruled that appellants need not have exhausted their administrative remedies prior to filing suit if the action is certified as a class action, but if appellants were not certified as class representatives, their suit would be barred by their failure to individually seek administrative relief.

On June 30, 1978, the trial court denied the motion for class certification and ordered that the action be dismissed for failure of appellants to exhaust their administrative remedies.

On appeal, appellants contend that they are entitled to certification as a class action suit in order to present their claims without exhausting their administrative remedies. Appellants also urge the Court of Appeal to reach the merits of the case, and to hold that not only the annual uniform allowance, but also the ammunition allowance, the holiday pay, and the lump sum payment of sick leave time, qualify as "compensation" that must be considered in the computation of their pension benefits.

Respondent PERS contends that appellants do not represent an ascertainable class with a well-defined community of interest and that, as individuals, appellants must exhaust their administrative remedies. Respondents also contend that the merits are not properly before the court in that the trial court's immediate order of February 1, 1978, that the uniform allowance be included in the computation of pension benefits was an interlocutory judgment. Respondents further contend that if this court does reach the merits, the trial court's interim decision that appellants' uniform allowance be considered in the computation of pension benefits should be reversed. Respondent City of Hayward also contends

that the trial court's decision overruling its demurrer to the petition of mandate should be reversed in that no cause of action has been stated against the city.

*Class Certification*

■ Section 382 of the Code of Civil Procedure provides, in pertinent part, ". . . when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." Two requirements must be met to sustain a class action under section 382: There must be an ascertainable class, and there must be a well-defined community of interest in the questions of law and fact involved. (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].) We find the present action eminently suitable for class action disposition.

Class members are "ascertainable" where they may be readily identified without unreasonable expense or time by reference to official records. (*Hypolite* v. *Carleson* (1975) 52 Cal.App.3d 566, 579 [125 Cal.Rptr. 221].) The identity of the class in the instant case is readily ascertainable from PERS' departmental records. Respondents' contention that the four named appellants cannot be certified as representatives of present and *future* recipients of benefit is erroneous. In construing the class to include future retired local safety members, respondents apparently relied upon the language in the appellant's original petition for writ of mandate rather than the subsequent notice of motion and motion for order determining that action is maintainable as a class action. The latter document seeks an order certifying a class to include only *present* retirees or widowed spouses receiving pensions. Moreover, in a very practical sense, named appellants are representative of future member employees. Their representative capacity stems from the fact that PERS will likely amend its administrative procedures to harmonize with the ultimate outcome of the substantive merits of this litigation, rather than pursue the undesirable alternative of repetitive and unavailing litigation.

The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. (*Richmond* v. *Dart Industries, Inc., supra,* 29 Cal.3d 462, 470.) In the present action, only the first

two elements are disputed by the litigants. We find that appellant has satisfied both of the elements in question. The one decisive issue pervading the litigation, whether the class members have been wrongfully deprived of pension benefits by an improper method of computation, will not be decided on the basis of facts peculiar to each class member, but rather, on the basis of a single set of facts applicable to all members. Thus, appellants' action involves only one claim which turns on only one question of law common to all class members. Consolidation in a class action thereby creates substantial benefits for both the parties and the courts in that class action disposition averts the unnecessary risk of numerous and repetitive administrative and judicial proceedings with the attendant possibility of inconsistent adjudication.

A finding of common questions of law and fact in the present case accords fully with prior decisions where plaintiffs seeking retroactive payment of governmental benefits have sued as a class. In *Hypolite* v. *Carleson, supra*, 52 Cal.App.3d 566, the plaintiff sought class certification in an action for AFDC benefits which were allegedly wrongfully withheld under a statute that provided for aid to families with children during the continued absence of a parent. Pursuant to this statute, the Department of Social Welfare denied AFDC benefits to families where parents maintained a home together but apart from their child. The defendant agency conceded that the designated class shared a common question of law because each plaintiff's case turned on construction of the same statute regulating AFDC payments. In contending that the action should not be certified, the agency's argument rested on the premise that the many variables which determine eligibility would have to be evaluated in each case in order to determine the propriety of the retroactive aid. Since such an evaluation would require inquiry into "a myriad of factors," the agency inferred that plaintiffs failed to make a showing of common questions of *fact*. The Court of Appeal rejected the agency's argument, holding that the designated class consisted only of those individuals who were rendered ineligible for AFDC *solely* because their parents maintained a home together elsewhere. Thus, the court found it clear that but one essential fact was to be pursued by appellant with respect to each class member who claims retroactive AFDC benefits.

Respondents cannot distinguish the instant case from *Hypolite*. In fact, resolution of each applicant's claim requires no inquiry into any peripheral issues. The single, decisive issue for all class members is whether the pertinent allowances should be included in the computation

of retirement benefits. While the amount of individual claims may vary from member to member, the introduction of that variable into the equation in no way alters our decision. The law unequivocally provides that each class member may establish damages independently without threatening the integrity of the class action. (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 815 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 709 [63 Cal.Rptr. 724, 433 P.2d 732].)

A major thrust of respondents' argument centers on alleged alternatives to a class action, including joinder and intervention. Once again, we are unconvinced by respondents' argument. The requirement of Code of Civil Procedure section 382 that there be "many" parties to a class action suit is indefinite and has been construed liberally. Where a question is of common interest to "many" persons, an action may be maintained as a class action even where the parties are numerous and it is in fact practicable to join them all. (*Renken* v. *Compton City School Dist.* (1962) 207 Cal.App.2d 106, 113 [24 Cal.Rptr. 347].) No set number is required as a matter of law for the maintenance of a class action. (*Hebbard* v. *Colgrove* (1972) 28 Cal.App.3d 1017, 1030 [105 Cal.Rptr. 172].) Thus, our Supreme Court has upheld a class representing the 10 beneficiaries of a trust in an action for removal of the trustees. (See *Bowles* v. *Superior Court* (1955) 44 Cal.2d 574 [283 P.2d 704].) Similarly, in *Hebbard*, a class action on behalf of a minimum of 28 beneficiaries of a trust alleging improper conduct by trustees was not inappropriate on the theory that the class was too small. (See also, *Collins* v. *Rocha* (1972) 7 Cal.3d 232 [102 Cal.Rptr. 1, 497 P.2d 225], upholding a class action filed by 9 named plaintiffs on behalf of 35 others.) The class of 42 retirees in the present case is quantitatively sufficient for a class action.

Numbers alone do not compel our decision. Considerations of equity as well counsel us toward a decision in favor of certification. The right to file a class action originates in equity, with the objective of redressing small wrongs that otherwise might go unredressed. (*Bauman* v. *Islay Investments* (1975) 45 Cal.App.3d 797, 802 [119 Cal.Rptr. 681].) The alternatives of multiple litigation (joinder, intervention, consolidation, the test case) often do not sufficiently vindicate legal rights because these devices "'presuppose "a group of economically powerful parties who are obviously able and willing to take care of their own interests individually through individual suits."'" (*Vasquez* v. *Superior Court, supra*, 4 Cal.3d 800, 808.) Respondents suggest that appellants repre-

sent a group of economically powerful parties, able and willing to take care of their interests. They contend that at least one class member, and possibly more, might gain up to $3,700, a sum which respondents find to be sufficient incentive for litigation on an individual basis. We disagree. Even were respondents to convince us that *all* class members stood to realize a substantial gain, we remain unconvinced that class action certification should be denied. The possibility of a potential recovery for each class member larger than a nominal sum does not in itself militate against the maintenance of such an action. (*Collins* v. *Rocha, supra*, 7 Cal.3d 232, 238.) To hold otherwise would impose upon any reasonable man's sense of justice. A brief review of the facts of the case reveals a history of three and a half years of protracted litigation. Attorney's fees for that period alone would devour a substantial portion on individual litigant's potential recovery of $3,700. We see no basis in law or equity for making a sacrificial lamb of Rose or any other individual class member on behalf of the other 41 class members. The course respondents suggest may effectively discourage the issue from being adjudicated. We cannot permit such an inequity when the very purpose of class actions is to open a practical avenue of redress to litigants who would otherwise find no effective recourse for the vindication of their legal rights.

*Exhaustion of Administrative Remedies*

Contrary to respondents' contentions, plaintiffs in a class action need not exhaust their administrative remedies prior to instituting judicial proceedings where the administrative remedies available to the plaintiffs do not provide for class relief. (*Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 690-691 [94 Cal.Rptr. 421, 484 P.2d 93].) Here, as in *Ramos*, the statutory provision for an administrative appeal is premised upon an individual claim and makes no mention of class relief. Government Code section 20133, which codifies the retirement system's administrative remedy, states: "The board (of administration of the Public Employees' Retirement System) may, in its discretion, hold a hearing for the purpose of determining any question presented to it involving any right, benefit, or obligation of *a person* under this part..." (Gov. Code, § 20133.) The reference to "a person" clearly contemplates individualized treatment of claims for retirement benefits rather than class actions.

The absence of an adequate administrative remedy becomes even clearer when we consider that the Administrative Procedure Act (Gov.

Code, § 11500 et seq.) has no provisions for pretrial proceedings in which prompt and early determination of class membership may be made. Nor are there any provisions for notice to the absent class members informing them that they are required to decide whether to remain members of the class represented by counsel for the named plaintiffs, whether to intervene through counsel of their own choosing, or whether to pursue independent remedies. Such pretrial proceedings are constitutionally required as a matter of due process when an adjudication is to be made which will be binding upon the entire class. (*Home Sav. & Loan Assn.* v. *Superior Court* (1976) 54 Cal.App.3d 208 [126 Cal. Rptr. 511].) Hence, the administrative hearing procedure established by the Legislature for claims of rights arising from the Public Employees' Retirement Law is constitutionally inadequate for class action hearings, thus defeating respondent's contention that appellants must seek administrative relief as a class.

Respondent contends that as an administrative agency empowered by the Administrative Procedure Act, its board has the power to consolidate several actions into a "test case/class action involving many persons similarly situated." As authority for this proposition, respondents cite Government Code section 11512, which states, in pertinent part, as follows: "(b) ... When the hearing officer alone hears a case he shall exercise all powers relating to the conduct of the hearing." Respondents point to one case in which the statute was interpreted liberally to permit the hearing officer to continue a case without issuing written notice (*McPheeters* v. *Board of Medical Examiners* (1947) 82 Cal. App.2d 709 [187 P.2d 116]) and another in which the hearing officer was upheld in deciding the order of procedure of evidence and witnesses at his hearing. (*Ehrlich* v. *McConnell* (1963) 214 Cal.App.2d 280 [29 Cal.Rptr. 283].) The cases cited by respondents are inapposite, and we differ substantially with respondents' construction of Government Code section 11512. Although section 11512 may on its surface read as a plenary grant of authority to hearing officers, the section must nonetheless be read conjunctively with all other pertinent statutes relating to administrative hearings. As we have seen, Government Code section 20133 grants a right only to *individuals* to present claims to PERS. A hearing officer's discretionary authority may be broad, but it is not so broad that all other statutes relating to the conduct of administrative hearings will be denied effect in deference to the hearing officer's discretion. A hearing officer would clearly exceed his authority under Government Code section 11512 in entertaining a class action. Moreover, even were the statute the absolute grant of authority respondents interpret it to be,

constitutional questions would again lurk in the shadows. The due process requirement of notice to absent class members must not be left to the hearing officer's discretion. A hearing officer would violate both statutory and constitutional authority in opening his hearing room to a class action.[1]

*Due Process*

 A defendant in a class action has a due process right to secure a determination of the issues relating to the suitability of the action as a class matter prior to determination of the merits of the action. (*People v. Pacific Land Research Co.* (1977) 20 Cal.3d 10, 16 [141 Cal.Rptr. 20, 569 P.2d 125].) When a determination as to class certification is postponed until after proceedings on the substantive merits, the defendant "is subject 'to one-way intervention,' which would allow potential class members to elect whether to join in the action depending upon the outcome of the decision on the merits." (*Ibid.*) Such a consequence is prejudicial to the defendant in that, while an adverse ruling on the merits would bind the defendant under collateral estoppel principles, the defendant would not necessarily gain a reciprocal benefit if he prevailed, since the ruling in his favor would not be binding on class members who had no notice of the proceedings.

Where a defendant voluntarily accedes to a trial court hearing on the merits prior to determination of the class issue, he thereby waives his right to a class certification prior to hearings on the substantive merits. (*Civil Service Employees Ins. Co.* v. *Superior Court* (1978) 22 Cal.3d 362, 373 [149 Cal.Rptr. 360, 584 P.2d 497].) In the case before us, the parties stipulated to a trial court determination of liability prior to deciding whether the action could be maintained as a class action. The defendant thereby waived his due process right to a pretrial determination of class maintainability. Thus, the trial court's decision against the PERS with regard to the annual uniform allowance is binding on the defendant as to all class members. On the other hand, the trial court's decisions in favor of the system with regard to holiday pay, ammunition

---

[1]Respondents also submit that Code of Civil Procedure section 382 gives any court, "including an administrative tribunal," discretion to hear a class action. Respondent's construction of the statute is an act of linguistic legerdemain. There is no language in Code of Civil Procedure section 382 to suggest that it applies to any but judicial tribunals. And even if the statute did confer a general authority to administrative bodies to entertain class actions, Government Code section 20133, limiting PERS hearings to individual actions, would supervene to preclude the maintenance of a class action.

allowance, and unused sick leave are binding only as to the four plaintiffs who sued in an individual capacity. All other local safety members whom the named plaintiffs purported to represent are free to relitigate these issues with the sole protection for defendant being stare decisis. We make note of the defendant's waiver in order to clarify the procedural posture of the case, and with an eye toward expediting the ultimate outcome of this protracted litigation by precluding further superfluous appeals on what is, at this time, a "nonissue."

### Review of the Merits Is Appropriate

Respondents contend that the merits of this case are not properly before this court in that the trial court's order of February 1, 1978, after hearings on the merits was an interlocutory judgment. The order stated, in pertinent part " ... the court concludes that the annual uniform allowance should be included in the computation of pension benefits. The ammunition allowance, holiday pay, and lump sum unused sick leave should be excluded from the computation of pension benefits. [¶] With respect to this court's jurisdiction, petitioners need not have exhausted administrative remedies prior to this proceeding if they are certified as representatives of a class action suit. If, however, petitioners are not certified as class representatives, petitioners' failure to individually exhaust administrative remedies bars relief...." Respondent argues that by subsequently denying appellant's petition for certification as a class action, the court "voided" its order of February 1, 1978. We nonetheless find that the merits are before this court.

The trial court's ruling on the merits prior to the decision on the class action issue was not a final judgment. It is true that as such the order was not *directly* appealable. (*Travelers Insurance Co.* v. *Superior Court* (1977) 65 Cal.App.3d 751, 754 [135 Cal.Rptr. 579].) It is also true that many other orders are not directly appealable, that is, not reviewable on a direct appeal, and that some judgments which are regarded as interlocutory and not final are similarly not *directly* appealable. But it is also recognized that virtually all such orders are ultimately reviewable, either by extraordinary writ, or more often on appeal from a final judgment or an appealable order. (6 Witkin Cal. Procedure (2d ed. 1971) Appeal, §§ 34, 36, pp. 4048-4050.)

A decision by a trial court denying certification to an entire class is an appealable order. (*Richmond* v. *Dart Industries, Inc., supra*, 29 Cal.3d 462, 470.) Given the availability of appellate review for an order

denying the class action certification, it would be wholly inconsistent with the principle of judicial economy to refuse to reach the merits in a case such as this where the parties stipulated to a hearing on the merits *prior to* determination of suitability as a class action. To hold otherwise would lead to anomalous and wasteful consequences. On remand to the trial court, the same court which heard the original trial of the merits would be required to hold a second trial on the same issue of pension benefits, litigated by the same parties who litigated the merits of the case in the trial court in 1977 and 1978. Given the enthusiasm both parties have displayed in litigating the issues of this case for the past five years, in all probability an appeal would ensue whatever the decision of the trial court on the merits. Inasmuch as the trial court has already reached the merits of this case through the "inverse" procedure to which the parties stipulated, failure to reach the merits at this time would squander the time, energy and resources of both the parties and the courts. In fact, the course that respondents suggest would be wholly adverse to the policy underlying the "one final judgment" rule—to *avoid* piecemeal litigation. ■ To preclude such an improvident result, we hold that where the parties have stipulated to a hearing on the merits prior to class certification, on an appeal from the denial of the class certification, the reviewing court may properly reach the merits.

Respondents' contention that the denial of the class action certification "voided" the order as to the merits does not convince us that we should hold otherwise. Though the trial court may have made the granting of the class action certification a condition precedent to its order's effectiveness, the pivotal fact remains that the trial court did hear the arguments on the merits from both parties and thereafter issued an order. Further, at this stage in the litigation, the order of February 1, 1978 *is* effective in that the condition precedent of class certification has been met by way of our reversal of the trial court's order denying certification.

*Pension Benefits*

The provisions governing the administration of the Public Employees Retirement System (PERS) are set forth in part 3 of division 5 of title 2 of the Government Code. (Gov. Code, § 20000 et seq.) Local public agencies, such as the City of Hayward, may elect to participate in the state retirement system. (Gov. Code, § 20450 et seq.) Such agencies are then subject to the Government Code.

The amount of the pensions provided to local members of PERS is a percentage of the "final compensation" received by such members. (See, e.g., Gov. Code, §§ 21252.01, 21252.5, 21252.6 and 21294.) "Final compensation" is defined as "the highest average annual compensation earnable by a member" during a certain period immediately preceding the date of the local safety member's retirement. (See Gov. Code, §§ 20024.01, 20024.2.) "Compensation" is defined as "the remuneration paid in cash out of funds controlled by the employer, plus the monetary value, as determined by the [Board of Administration] of living quarters, board, lodging, fuel, laundry, and other advantages of any nature furnished a member by his employer in payment for his services or for time during which the member is excused from work because of holidays, sick leave, vacation, compensating time off, or leave of absence...." (Gov. Code, § 20022.)

■ If an ambiguity or uncertainty exists, the foregoing statutory provisions are to be construed in favor of the pensioner. Thus, it is well established that pension provisions shall be liberally construed in favor of the applicant. (*Terry* v. *City of Berkeley* (1953) 41 Cal.2d 698, 701-702 [263 P.2d 833].)

*Holiday Pay*

"Holiday pay" for the police officers and fire fighters of the City of Hayward is provided pursuant to Administrative Rule 2.2 of the City of Hayward. Rule 2.2 states that it applies only to sworn, uniformed personnel of the police and fire departments who are *regularly required to work on holidays.* According to this rule, the employees of those departments are to be provided with holiday pay for the first five holidays of the year which they work.

Respondents apparently concede that the holiday pay provided to Hayward's police officers and fire fighters is remuneration paid in cash out of funds controlled by the employer in payment for their services and therefore within the definition of "compensation" set forth in Government Code section 20022. However, they argue that such compensation is "compensation based on overtime," and thus is to be excluded from computation of retirement benefits pursuant to Government Code section 20025.2. That section defines overtime work as service performed *"in excess of the hours of work considered normal* for employees on a full-time basis." (Italics added.)

■ Respondents' characterization of the holiday pay as overtime is clearly erroneous. Administrative Rule 2.2 plainly states that Hayward's police officers and fire fighters are regularly required to work on legal holidays. Accordingly, the hours worked by a police officer or a fire fighter on any "legal holiday" designated by the city are not "overtime work" because they are part of the normal hours of work for those employees, rather than in excess of such hours. Hence, the holiday pay provided to Hayward's police officers and fire fighters cannot be considered as compensation based on overtime and therefore cannot be excluded from the salary upon which their retirement benefits are based.

Respondents contend that holiday pay should be excluded from the computation of benefits because not all employees are required to work the *same* holidays. "By the very nature of holidays falling at different parts of the year, some members receive 'holiday pay' and others do not." Respondents' contention is irrelevant with regard to the five holidays which the local members are required to work. Although the city might stagger the five holidays that any given employee must work, the pertinent fact remains that all employees work five holidays for which they receive twice their normal amount of pay. Thus, the holiday pay clearly falls within the definition of "compensation earnable" rather than "overtime." It must be included in the computation of pension benefits. (Accord, *Santa Monica Police Officers Assn.* v. *Board of Administration* (1977) 69 Cal.App.3d 96, 100, fn. 3 [137 Cal.Rptr. 771].)

Insofar as respondent PERS relies on the fact that it has made an administrative interpretation that the holiday pay provided to Hayward police officers and fire fighters is compensation for overtime, where there is no ambiguity in a statute and the administrative interpretation of it is clearly erroneous, even the fact that such administrative interpretation is a longstanding one does not give it legal sanction. (*California Drive-In Restaurant Assn.* v. *Clark* (1943) 22 Cal.2d 287, 294 [140 P.2d 657, 147 A.L.R. 1028].) The enduring nature of the interpretation gives it no intrinsic validity.

*Payments for Unused Sick Leave*

Justice Kaus addressed the issue of whether lump sum payments for unused sick leave should be included in PERS' computation of pension

benefits in *Santa Monica Police Officers Assn.* v. *Board of Administration, supra,* 69 Cal.App.3d 96. He held that they were not, and his decision is dispositive.

"First, as noted above, a pension is generally based on two factors: compensation and time, or length of employment (§ 21252.01.) Sick leave and vacation time are treated by the Legislature as a *time* factor. Thus, in 'computing the service with which a member is entitled to be credited . . . time during which the member is excused from working because of holidays, sick leave, vacation, or leave of absence, with compensation, shall be included.' (§ 20810.) And, when an employee has not used all the sick leave time to which he is entitled, such sick leave time is credited when the employee retires as '0.004 year of service credit for each unused day of sick leave . . . .' (§ 20862.8; see also § 20862.5.) The legislative intent was to assure that an employee, entitled to certain time off from work, was nevertheless treated as if he had worked continuously. [¶] Second, in defining 'compensation earnable,' section 20023 refers to 'average monthly compensation' and 'same rate of pay,' suggesting, as noted, that the Legislature intended to exclude nonperiodic payments that did not apply to all employees similarly situated. [Fn. omitted.] Specifically, the Legislature has excluded overtime pay from the compensation to be included in computing a pension. (§ 20025.2.) [¶] Lump-sum payments for unused sick leave and vacation time, although not conventional instances of overtime pay, are analogous in that an employee is entitled to receive such lump-sum payments when he has worked more time than he was expected to work. [Fn. omitted.] Besides, as noted, when the Legislature in section 20862.8 did specifically permit unused sick leave—extra work time—to be used in pension computations, it did so as a factor of time. Finally, given what appears to be a random policy concerning a public employee's right to accrue sick time and vacation time, the Legislature had no great incentive to enact specific legislation on the subject. [Fn. omitted.] [¶] Third, section 20024.01 limits the relevant period to 'compensation earnable' during the three years preceding retirement. Lump-sum payments may—or may not (*ante,* fn. 3)—cover only a three-year period. Certainly, amounts accrued over a lengthy period of time would totally distort the legislative scheme. [¶] In short, we conclude that, viewing the State Retirement System as an entity, the Legislature intended to exclude lump-sum payments for unused sick leave and vacation time from pension computations. [Fn. omitted.]" (Pp. 99-101.)

*Uniform Allowance*

■ Public safety members have received an annual uniform allowance since 1960. In testimony at the trial court, an administrator for PERS contended that the uniform allowance should not be included in the computation of pension benefits because the Legislature has, in effect, limited the goods and services which can be included in the computation of pension benefits to those items expressly listed in section 20022. The administrator clearly misinterprets the statute. By its express terms, section 20022 does not purport to be an exhaustive list of goods and services which may be included in the computation of benefits. Compensation is defined as remuneration paid in cash "... plus the monetary value ... of living quarters, board, lodging, fuel, laundry, *and other advantages of any nature* furnished a member in payment for his services." (Italics added.) The express provisions of the statute make it clear that the uniform allowance must be included in the computation of pension benefits.

When asked to explain the rationale behind excluding the uniform allowance from the pension benefits, the administrator for PERS stated, "This is something for the convenience of the employer. It's a condition of employment and it's not compensation for services." We would agree with the administrator in that a uniform allowance benefits the employing police and fire department. To say that the uniform allowance benefits the employer, however begs the question. The issue is whether or not the allowance provides an "advantage" to the *employee*. While it is accurate to say that uniformity of attire provides a benefit to the employer in that it makes these civil servants readily identifiable to the public, it is at the same time accurate to say that the uniform allowance provides a benefit to the employee in that the uniform substitutes for personal attire which the employee would otherwise be forced to acquire with personal resources. Therefore, the uniform allowance must be included in the computation of pension benefits.[2] (See also, *Anderson v. City of Long Beach* (1959) 171 Cal.App.2d 699, 702 [341 P.2d 43].)

---

[2]We note that our reasoning as to the uniform allowance in this case may not be applicable in all instances where an employer provides an employee with work-related attire, or with an allowance for work-related attire. For example, if a fire department provided its workers with specially designed asbestos uniforms, these could hardly be characterized as a ready substitute for personal attire and could not fairly be added in the computation of pension benefits.

*Ammunition Allowance*

Appellants contend that an ammunition allowance is directly analogous to a uniform allowance. We disagree. In fact, the ammunition allowance is not an "advantage" to the employee in the same sense as is a uniform allowance. The uniform allowance provides an employee with funds with which to purchase clothing, a good which the employee would have to purchase regardless of the nature of his occupational duties. Ammunition is simply not analogous. While it is true in one sense that the employee "benefits" from the ammunition in that it protects him, the employee would not need to purchase the ammunition *but for* his employment. Where an employee is provided with an allowance to acquire goods or services which mitigate a risk inherent in the employment, the "benefit" to the employee is not compensable for pension purposes. The "benefit" that ostensibly accrues to the policemen merely offsets the risks attendant upon employment with the police department. Therefore, the ammunition allowance should not be included in the calculation of benefits.

*Status of City of Hayward as a Proper Party*

■ Respondents City of Hayward and City Manager Hanley argue on appeal that no cause of action has been stated against the city and the city manager in that "[n]o effective order could be made against them ordering them to determine a pension computation for any one of the appellants, because it is the obligation of respondent PERS to make such determination, nor could any effective order be made against the city respondents ordering them to pay a pension from the Public Employees' Retirement System because respondent PERS runs the system and pays the pensions." We disagree. Respondents City of Hayward and City Manager Hanley will be affected by the judgment in this action since the amount of the city's contributions to PERS will need adjustment in accordance with section 20527 of the Government Code to make up for the fact that the city has failed to include holiday and the uniform allowance in the salaries upon which its contributions were previously based. Hence, respondents City of Hayward and Hanley are proper, if not necessary, parties defendant and a cause of action was stated against them.

The judgment of the trial court denying class certification is reversed. The order of February 1, 1978, on the merits is affirmed as to the uni-

form allowance, the unused sick leave, and the ammunition allowance, but is reversed as to holiday pay.

We remand for notice to absent class members and other proceedings consistent with our decision.

Rouse, Acting P. J., and Smith, J., concurred.

A petition for a rehearing was denied January 13, 1982, and the petition of respondent Board of Administration of Public Employees Retirement System for a hearing by the Supreme Court was denied February 24, 1982. Mosk, J., and Reynoso, J., were of the opinion that the petition should be granted.