[No. G041816. Fourth Dist., Div. Three. June 28, 2010.]

ROBERT STEVENSON, Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF THE ORANGE COUNTY EMPLOYEES
RETIREMENT SYSTEM, Defendant and Respondent.

COUNSEL

Silver, Hadden, Silver, Wexler & Levine and Robert M. Wexler for Plaintiff and Appellant.

David H. Lantzer for Defendant and Respondent.

OPINION

FYBEL, J.—

### INTRODUCTION

Orange County employees receive retirement benefits under a retirement system established pursuant to the County Employees Retirement Law of 1937 (CERL) (Gov. Code, § 31450 et seq.). (All further statutory references are to the Government Code, unless otherwise specified.) The pension amount an employee receives is based in part on the employee's " '[c]ompensation earnable' " which is defined in section 31461 as "the average compensation . . . for the period under consideration upon the basis of the average number of days ordinarily worked by persons in the same grade or class of

positions during the period, and at the same rate of pay." An employee's compensation earnable includes compensation received for mandatory overtime work the employee performed that is also ordinarily worked by others in the same grade or class. Compensation received for work performed that is not ordinarily worked by others in the same grade or class of positions is excluded.

Plaintiff Robert Stevenson worked as an investigator in the narcotics bureaus of the Orange County Sheriff's Department until he suffered a serious injury and was approved for disability retirement. In calculating Stevenson's pension allowance, the Orange County Employees Retirement System (OCERS) did not include the overtime compensation he received for duties performed for the narcotics bureaus in calculating his compensation earnable. Stevenson challenged OCERS's Board of Retirement's (OCERS Board) exclusion of the overtime from the calculation of his compensation earnable and the OCERS Board referred the matter to a referee to conduct an administrative hearing.

The referee concluded Stevenson's overtime compensation should not be included in his compensation earnable calculation because Stevenson's grade or class under CERL was that of the class of investigators and not of a subgroup comprised of narcotics investigators. In reaching this conclusion, the referee cited section 31461; the OCERS Board's resolution No. 98-2001 (the resolution), which addresses the elements included in determining an employee's compensation earnable; and language from a memorandum of understanding applicable to peace officers, which did not identify narcotics investigators as a class separate from the class of investigators. He concluded the overtime Stevenson might have regularly worked as part of the narcotics investigator teams should not be included in compensation earnable because other investigators, specifically investigators who did not work in the narcotics bureaus, were not required to work such overtime and did not ordinarily work such overtime. The OCERS Board adopted the referee's recommendation.

Stevenson filed a petition for administrative mandate challenging the decision of the OCERS Board. Stevenson's petition was denied by the trial court and he appealed.

We affirm. As discussed in detail *post*, the administrative record contains substantial evidence showing Stevenson's grade or class within the meaning of section 31461 was that of investigator. Therefore, the overtime he worked that was unique to investigators in the narcotics bureaus was properly excluded from his compensation earnable.

# BACKGROUND

## I.

### STEVENSON'S EMPLOYMENT

Stevenson was hired by the Orange County Sheriff's Department in November 1986 as a deputy sheriff. In August 1988, he was promoted to the position of senior deputy sheriff and then in March 1998, he was promoted to the position of investigator with the south narcotics bureau.[1] In October 1999, he transferred to the north narcotics bureau where he worked until June 2001, when he was seriously injured and began the process of applying for disability retirement.

While with the narcotics bureaus, Stevenson worked with other investigators to investigate narcotics crimes. (We refer to the investigators who, like Stevenson, worked on narcotics cases as narcotics investigators.) Stevenson was regularly scheduled to work Monday through Thursday, from 8:00 a.m. until 7:00 p.m. He had to be available by pager 24 hours a day and available to work overtime whenever it was necessary to complete an ongoing investigation. Because drug dealers often worked late at night and opportunities to set up controlled buys with informants were limited to the dealers' availability, all narcotics investigators would be required to work overtime to complete an investigation if and when the opportunity arose. Stevenson testified he worked 20 or more hours of overtime each week.

## II.

### STEVENSON'S UNSUCCESSFUL CHALLENGES TO OCERS'S EXCLUSION OF THE OVERTIME COMPENSATION HE EARNED IN CALCULATING HIS COMPENSATION EARNABLE.

Stevenson's disability retirement was effective in October 2001. He was informed by an OCERS specialist that his monthly disability retirement allowance was $3,395.07, which was calculated by measuring his employment period from April 1, 1998, to March 31, 2001. During this time period, two different memoranda of understanding entered into between the County of Orange (the County) and the Association of Orange County Deputy Sheriffs for the Peace Officer Unit and Supervising Peace Officer Unit were in effect (the MOU's, collectively). Each of the MOU's identified the following as the "[c]lasses included in the Peace Officer Unit": (1) deputy

---

[1] The north and south narcotics bureaus, along with gang and vice units, conduct the department's "special investigations."

sheriff I; (2) deputy sheriff II; (3) deputy sheriff trainee; (4) investigator; and (5) investigator-polygraph operator.

Stevenson sought review of OCERS's calculation, arguing OCERS failed to consider narcotics investigators as a grade or class under CERL and thus erred by excluding from his compensation earnable the overtime he, along with the other narcotics investigators, was required to work to complete ongoing narcotics investigations.

OCERS's manager of member services, Stephen Cadena, conducted an independent review of OCERS's exclusion of Stevenson's overtime compensation as an element of the compensation earnable and concluded its exclusion was proper. Stevenson sought review of Cadena's decision by OCERS's chief executive officer, Keith Bozarth. Bozarth agreed with OCERS's original calculation, stating: "Although the overtime described by [Stevenson] is mandatory, it is not regularly scheduled in the ordinary course of his workday. It is incidental, and occurs on a non-routine basis." Bozarth further explained that the resolution passed by the OCERS Board excludes from the compensation earnable calculation compensation paid for overtime work that is neither mandatory nor "ordinarily worked by others in the same pay grade or class."

Stevenson appealed to the OCERS Board, which upheld the staff's decision to exclude the overtime from his compensation earnable. Stevenson appealed the OCERS Board's decision by requesting an administrative hearing.

III.

### The OCERS Board Adopts the Referee's Recommendation That Stevenson's Overtime Should Be Excluded from His Compensation Earnable.

In response to Stevenson's request to appeal its decision, the OCERS Board assigned a referee, James S. Armstrong, Jr., to conduct the administrative hearing. Following the hearing, Armstrong issued his "Summary of the Evidence, Findings of Fact, Conclusions of Law and Recommendation," which identified the issue to be decided as: "Whether the overtime worked by [Stevenson] as a narcotics investigator for the Orange County narcotics unit was 'compensable earnable' and includable in the calculation of his retirement pension." Armstrong concluded: "The short answer is that overtime worked as part of a team of investigators in the performance of duties as a narcotics investigator conducting surveillance, serving warrants, making controlled buys and arrests, and pre-scheduled overtime are 'compensable earnable' and should be included in calculation of [Stevenson]'s retirement

pension. Overtime which is not performed as part of such team is 'true overtime' and not includable in said computation." After OCERS filed objections to Armstrong's conclusions of law and recommendation, Armstrong reaffirmed his original conclusions and recommendation to the OCERS Board.

The OCERS Board did not adopt Armstrong's recommendation, but instead sent the matter back to Armstrong with instructions to decide the case based on the resolution and CERL, and to take additional evidence on whether (1) "the Narcotics Unit comprises a separate grade and class"; and (2) all the employees in Stevenson's same grade or class and having his same rate of pay were required to and ordinarily did work the same overtime as that worked by Stevenson.[2]

Armstrong passed away before further hearing in the case occurred, and the matter was assigned to referee Edward Trabin. In the "Summary of Evidence, Findings of Fact, Conclusions of Law and Recommendations After Consideration of Objections," Trabin cited the resolution, the classifications listed in the MOU's, and the language of section 31461, and concluded investigators who worked for the narcotics unit did not constitute their own separate grade or class within the meaning of CERL. Therefore, overtime compensation Stevenson received for overtime unique to narcotics investigators should not be included in the calculation of compensation earnable under CERL. The OCERS Board adopted Trabin's recommendations.

Stevenson filed a petition for writ of administrative mandate under Code of Civil Procedure section 1094.5, in which he contended the OCERS Board "committed a prejudicial abuse of discretion and failed to proceed in the manner required by law" because (1) the findings of fact made by the original hearing officer, adopted by Trabin and the OCERS Board, are not supported by the weight of the evidence introduced at the administrative hearing; (2) the OCERS Board's decision is not supported by the findings of fact; (3) the OCERS Board did not properly apply the law to the findings of fact; (4) the OCERS Board's conclusions of law are not supported by section 31461, the resolution, case law, the MOU's or by the findings of fact; and (5) the OCERS Board "incorrectly concluded that it did not have the authority pursuant to [the resolution] and Section 31461 to determine that narcotics investigators were properly a grade or class of position within the meaning of that resolution and statute, respectively, such that they would be entitled to overtime as a part of their compensation earnable."

---

[2] The OCERS Board also instructed Armstrong to take additional evidence on the OCERS Board's "intent, as determined from public records and matters contained in the public record only, in enacting [the resolution] with regards to the inclusion of overtime in the calculation of compensation earnable." The parties, however, later stipulated that the OCERS Board's intent in adopting the resolution is stated in the resolution itself.

In the petition, Stevenson sought an order requiring the OCERS Board to vacate its decision and enter a new and different decision recalculating his pension benefits to include overtime as part of his compensation earnable within the meaning of CERL, retroactive to the date of his first pension payment. Stevenson also sought interest, attorney fees, and costs.

## IV.

### THE TRIAL COURT DENIES THE PETITION AND STEVENSON APPEALS.

The trial court denied Stevenson's petition. In its statement of decision, the trial court stated: "The record of the administrative proceedings having been received into evidence and examined by the Court, and no additional evidence having been received by the Court, arguments having been presented, and the matter having been submitted for decision, the Court makes the following Statement of Decision: [¶] ROBERT L. STEVENSON'S Petition for Writ of Mandamus directing the BOARD OF RETIREMENT [OF] THE ORANGE COUNTY EMPLOYEES' RETIREMENT SYSTEM to vacate its decision of December 17, 2007 and enter a new and different decision recalculating Petitioner's retirement benefits to include overtime as part of his compensation earnable retroactive to the date of his first retirement benefit payment is denied. [¶] The court exercised its independent review in determining the correctness of the underlying Administrative Hearing. Petitioner has the burden of persuading the court the Board's findings are incorrect and against the weight of the evidence. [Citation.] Petitioner has not met that burden here. [¶] The evidence and the case law submitted does not support petitioner's theory the Narcotics Investigator unit should be treated as a sub-class of the job class Investigator so as to allow the members of the Narcotics Investigator unit to treat the overtime worked at issue in this case as 'mandatory' overtime for the purposes of calculation of retirement benefits. There is insufficient evidence of any formal resolution or other authority requiring Narcotic[s] Investigators to work mandatory overtime as part of their normal hours of employment. The court is not prepared to re-write a Memorandum of Understanding between the Narcotics Investigators and their employer to create a sub-class for Narcotics Investigators. If the Narcotics Investigators wished to pursue a sub-class of the Investigatory classification, it should have been part of the bargaining process. [¶] The request for attorneys' fees is likewise denied."

No party filed any objections to the court's statement of decision. Judgment was entered and Stevenson appealed.

## DISCUSSION

Stevenson contends the trial court erred by denying the petition because the court erroneously (1) determined that the class language contained in the appendices of the MOU's controlled the determination of Stevenson's grade or class of positions within the meaning of section 31461, and (2) found insufficient evidence showed the overtime worked by narcotics investigators was mandatory. For the reasons discussed in detail *post*, the petition was properly denied.

### I.

CERL AND THE CALIFORNIA SUPREME COURT'S DECISION IN
*VENTURA COUNTY DEPUTY SHERIFFS' ASSN. V. BOARD OF RETIREMENT*
(1997) 16 CAL.4TH 483 [66 CAL.RPTR.2D 304, 940 P.2D 891].

■ "Under CERL an employee's pension is a combination of a retirement annuity based on the employee's accumulated contributions supplemented by a pension established with county contributions sufficient to equal a specified fraction of the employee's 'final compensation.' " (*Ventura County Deputy Sheriff's Assn. v. Board of Retirement, supra*, 16 Cal.4th at p. 490 (*Ventura*).) An employee's final compensation is calculated by first determining what payments made by the county employer, in addition to basic salary, qualify as " 'compensation earnable' " within the meaning of section 31461. (*Ventura, supra*, 16 Cal.4th at p. 487.)

Section 31461 provides: " 'Compensation earnable' by a member means the average compensation as determined by the board, for the period under consideration upon the basis of the average number of days ordinarily worked by persons in the *same grade or class of positions* during the period, and at the same rate of pay. The computation for any absence shall be based on the compensation of the position held by the member at the beginning of the absence. Compensation, as defined in Section 31460, that has been deferred shall be deemed 'compensation earnable' when earned, rather than when paid." (Italics added.) Section 31460, in turn, defines compensation as "the remuneration paid in cash out of county or district funds, plus any amount deducted from a member's wages for participation in a deferred compensation plan . . . but does not include the monetary value of board, lodging, fuel, laundry, or other advantages furnished to a member."

In *Ventura, supra*, 16 Cal.4th 483, the California Supreme Court analyzed the scope of the terms "compensation" and "compensation earnable" under

CERL. The Supreme Court held: "After considering the language and legislative history of the pertinent CERL provisions, we conclude that the Legislature did not intend to require that a county include its contributions to an employee's deferred compensation plan in 'compensation' as defined in CERL. We also conclude, however, that the other disputed premiums are 'compensation.' With the exception of overtime pay, items of 'compensation' paid in cash, even if not earned by all employees in the same grade or class, must be included in the 'compensation earnable' and 'final compensation' on which an employee's pension is based." (*Ventura, supra,* 16 Cal.4th at p. 487.)

The Supreme Court in *Ventura, supra,* 16 Cal.4th 483, did not address the issue presented in this case—the proper scope of a retiree's "grade or class of positions" within the meaning of section 31461 in determining whether overtime should be considered compensation earnable.

## II.

### THE RESOLUTION

In February 1998, the OCERS Board adopted the resolution to implement the "mandate of the Supreme Court" as set forth in *Ventura, supra,* 16 Cal.4th 483. The resolution contains recitals which state, inter alia, the *Ventura* decision "mandated a change in the method for calculating pension benefits for members and their beneficiaries by retirement systems governed by [CERL]," and that "the proper exercise of [the OCERS Board's] statutory duties under the Government Code requires it to prevent the improper manipulation of compensation for purposes of determining compensation earnable, and to avoid the artificial inflation of pension benefits."

In the resolution, the OCERS Board adopted certain policies and guidelines as recommended by the OCERS Board's ad hoc committee that was charged with the task of making recommendations to implement *Ventura.* As pertinent to this appeal, the resolution states: "Elements to be Included in 'Compensation Earnable'. Remuneration earned and receivable in cash (under applicable MOU) to the retiring employee during the final compensation period for working the ordinary time required of other employees in the same grade/class shall be included in 'compensation earnable', including but not limited to the following items of compensation, and others substantially

similar to them." One of the elements[3] thereafter listed is: " 'Overtime' required to be worked that is ordinarily worked by others in the same grade/class/rate of pay."

The resolution further states, in part: "Elements to be Excluded from 'Compensation Earnable'. Remuneration or other value to the employee neither earned [n]or payable in cash to the employee during the final compensation period for working the ordinary time required of other employees in the same grade/class shall be excluded from 'compensation earnable', including but not limited to the following items, and others substantially similar to them: [¶] True Overtime (amounts paid for working in excess of the time required and ordinarily worked by others in the same grade/class.)"[4]

Stevenson does not challenge the validity of the resolution or any of its provisions in this appeal.

III.

STANDARDS OF REVIEW AND GOVERNING LEGAL PRINCIPLES

We generally review a trial court's denial of a petition for writ of administrative mandate for substantial evidence. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824 [85 Cal.Rptr.2d 696, 977 P.2d 693] ["Even when, as here, the trial court is required to review an administrative decision under the independent judgment standard of review, the standard of review on appeal of the trial court's determination is the substantial evidence test."].)

---

[3] Other elements listed include base salary and wages, bilingual premium pay, educational incentive pay, aircraft rescue firefighting, paramedic pay, motorcycle bonus, emergency dispatch pay, field training officer bonus, shift differential pay, confined space pay, longevity incentive, automobile allowance, uniform allowance, uniform maintenance allowance, payoffs of earned vacation and sick leave and holiday pay, employee contributions to deferred compensation plans, compensatory time, " 'Madera' pay," additional compensation for scheduled meal periods, and "Flexible Benefits ('Cafeteria Plan') to the Extent paid in Cash (applicable to members retiring before January 1, 1991)."

[4] The resolution also identifies the following elements excluded from compensation earnable: employer contributions to deferred compensation plan, employer contributions to the retirement system, employer " 'Pick-up' " of employee contributions to the retirement system, payoffs of vacation and sick leave and holiday pay to the extent such leave or pay was neither earned nor permitted to be cashed out under the applicable MOU, regardless of when actually cashed out, flexible benefits provided in-kind, flexible benefits paid in cash to members retiring on or after January 1, 1991, terminal pay to the extent not included calculating the compensation earnable, expense reimbursement, in-kind advantages, and fees, licenses, and memberships provided by the employer.

In *Ventura, supra*, 16 Cal.4th at page 490, the Supreme Court stated: "The payments required by CERL to be included in the calculation of the pension of an employee whose county employer has elected to establish a retirement system governed by CERL presents a question of statutory construction, and thus legislative intent. . . . [¶] Which payments to a county employee other than base pay must be included when determining an employee's final compensation is a question crucial to the proper administration of a CERL pension system, including the ability of the county to anticipate and meet its funding obligation. . . . Any ambiguity or uncertainty in the meaning of pension legislation must be resolved in favor of the pensioner, but such construction must be consistent with the clear language and purpose of the statute. [Citations.]"

IV.

THE TRIAL COURT PROPERLY CONCLUDED STEVENSON'S "GRADE OR
CLASS OF POSITIONS" WAS THAT OF INVESTIGATOR AND NOT
*NARCOTICS* INVESTIGATOR.

Stevenson contends the trial court erred by concluding that his "grade or class of positions" within the meaning of section 31461 was that of investigator instead of narcotics investigator. Neither section 31461 nor any other section of CERL defines "grade or class of positions" for the purpose of determining an employee's compensation earnable. (See *Ventura, supra*, 16 Cal.4th at p. 493 [finding § 31461 unclear as to the meaning of the phrases " 'remuneration paid in cash' " and " 'average compensation' "].) The Legislature did choose the plural term "positions" in section 31461 to modify "grade or class," thereby strongly suggesting that a particular grade or class is not limited to one specific type of position but might encompass more than one type of position.

Pursuant to section 25300, the Legislature delegated to each county's board of supervisors the power to "prescribe the compensation of all county officers and shall provide for the number, compensation, tenure, appointment and conditions of employment of county employees." Section 25300 further provides "such action may be taken by resolution of the board of supervisors as well as by ordinance." Stevenson does not dispute that the adoption of the MOU's, position classifications, or a title schematic are effected through resolutions made by the board of supervisors as authorized by the Legislature in section 25300. We therefore examine those documents as they appear in the appellate record in our analysis of Stevenson's proper grade or class of positions under section 31461.

First, the MOU's that were in effect during the relevant time period each identified five "classes" of positions within the peace officer unit: (1) deputy sheriff I; (2) deputy sheriff II; (3) deputy sheriff trainee; (4) investigator; and (5) investigator-polygraph operator. Neither identified "narcotics investigator" as a grade or class of positions within the peace officer unit.

Second, the administrative record contains a page from Orange County's Web site identifying and defining the classification of "Investigator." The page described its "Class Characteristics" as follows: "Independent analysis of evidence, use of a broad scope of investigative techniques in a variety of assignments, ingenuity and necessity for independent action are characteristics of this class. Investigator positions are found in the Sheriff-Coroner Department and in the Family Support and Criminal Divisions of the District Attorney's Office. Incumbents may be assigned to the Hazardous Devices Squad, investigating and neutralizing dangerous materials." Examples of duties of the investigator class of positions include "assist[ing] in arrests or special investigations as requested by other law enforcement agencies," and "[c]onduct[ing] stakeouts and perform[ing] basic intelligence work; operat[ing] technical investigative equipment such as tape recorders, cameras and electronic sound equipment." As discussed *ante*, the narcotics, gang, and vice units conduct special investigations. Stevenson does not argue that the definition, class characteristics and examples of duties contained in the investigator classification inaccurately describe his former position as an investigator working for the narcotics bureaus. (Cf. *Neeley v. Board of Retirement* (1974) 36 Cal.App.3d 815, 818–820 [111 Cal.Rptr. 841] [although two identification technicians remained sworn as deputy sheriffs, they were not entitled to classification as safety members under CERL and thus were not eligible for earlier retirement because their actual duties did not fall within the scope of active law enforcement which implies hazardous activity].)

Third, the administrative record also contains a page from the Orange County government Web site defining the term "Title Schematic" as "an alphabetical listing of all class titles in the County" which "identifies the appropriate salary schedule and range for each class." The record also contains the title schematic itself which lists "Investigator I" and "Investigator" as class titles and lists their grades as P-06 and P-09, respectively. The title schematic is consistent with the MOU's in that it does not identify narcotics investigator as a separate class.

■ This documentary evidence constitutes sufficient evidence to establish Stevenson's "grade or class of positions" within the meaning of section 31461 as investigator. It is true the record contains testimonial evidence showing that Stevenson specialized within the class of investigator by specifically investigating narcotics and generally shared the same types of duties and

responsibilities and worked the same hours as the other investigators who identified themselves as narcotics investigators. But the Legislature did not define or otherwise intend the phrase "grade or class of positions" to consist of the smallest unit of workers who have the most in common as to duties, responsibilities, and schedules. Imposing such a specialized and perhaps also transient analysis, without regard to the county's determination of classes of positions might undermine "the ability of the county to anticipate and meet its funding obligation," which would be in contravention of legislative intent. (*Ventura, supra,* 16 Cal.4th at p. 490.) The trial court's conclusion narcotics investigators did not constitute their own class or grade within the meaning of CERL was consistent with the language and purpose of the statute. The trial court therefore did not err by denying the petition.

Stevenson cites *City of Sacramento v. Public Employees Retirement System* (1991) 229 Cal.App.3d 1470 [280 Cal.Rptr. 847], and *Rose v. City of Hayward* (1981) 126 Cal.App.3d 926 [179 Cal.Rptr. 287] (*Rose*), in support of his argument that the trial court should have found his grade or class to be that of narcotics investigator. Neither case supports Stevenson's argument. In *City of Sacramento v. Public Employees Retirement System, supra,* 229 Cal.App.3d 1470, the appellate court addressed the following issue: "[W]hether the extra one-half hour overtime 'premium' pay required by the federal Fair Labor Standards Act . . . is the equivalent of 'overtime' under the Public Employees' Retirement Law (PERL) . . . which is defined as payment for service performed 'in excess of the hours of work considered normal for employees on a full-time basis . . . .' " (*Id.* at p. 1475, fn. & citations omitted.) The appellate court held "[t]he FLSA does not preempt the state's ability to define 'overtime' in a manner inconsistent with federal law where there is no actual conflict with or frustration of the purposes of the federal minimum wage and maximum hour law." (*Id.* at pp. 1475–1476.) The appellate court did not address the issue presented here—how to determine an employee's class for purposes of analyzing whether overtime is included in or excluded from pension calculations.

In *Rose, supra,* 126 Cal.App.3d at page 940, the appellate court concluded holiday compensation (which would technically constitute overtime) that was received by uniformed personnel of the police and fire departments, who pursuant to an administrative rule are regularly required to work on holidays, should be included in the pension calculation under the Public Employees' Retirement System codified at section 20000 et seq. The appellate court analyzed whether the holiday pay should be considered true overtime because, being holiday pay, it was received for work performed " '*in excess of the hours of work considered normal* for employees on a full-time basis.' " (*Rose, supra,* 126 Cal.App.3d at p. 940.) The court held the City of Hayward's administrative rule regarding holiday pay "plainly state[d]" that "Hayward's police officers and fire fighters are regularly required to

work on legal holidays. Accordingly, the hours worked by a police officer or a fire fighter on any 'legal holiday' designated by the city are not 'overtime work' because they are part of the normal hours of work for those employees, rather than in excess of such hours." (*Id.* at p. 941.) The appellate court in *Rose* did not conclude, as suggested by Stevenson, that the administrative rule created two classes of police officers and firefighters for purposes of pension calculation issues—a class that was regularly required to work on holidays under the administrative rule and another class that was not. *Rose*, therefore, does not support Stevenson's argument.

Stevenson contends "the trial court erred in deciding that delineation of 'job classifications' in a memorandum of understanding is dispositive of determining what is a 'grade or class of positions' under the CERL." Stevenson argues: "The trial court summarily stated that narcotics investigators 'should not be treated as a sub-class of the job class Investigator.' . . . The trial court opined that creating a sub-class of 'Narcotics Investigator' out of the general 'Investigator' classification would have to be done through the collective bargaining process. . . . By effectively holding that delineation of represented job classifications in an MOU is *per se* determinative of the issues of which employees constitute a 'grade or class of positions' under the CERL, the trial court ignored the critical distinction between the term 'classification' for purposes of collective bargaining law and the term 'grade or class of positions' for pension calculation purposes under the CERL."

We do not construe the trial court's comments in the statement of decision to reflect the view that the language of the MOU's was dispositive in determining grade or class of positions under CERL, or to show the trial court disregarded the rest of the record in this case. The court's comments certainly show the court considered the classes identified in the MOU's as relevant in ruling on the petition. As discussed *ante*, consideration of the MOU's was proper.

Stevenson does not argue that OCERS's calculation of his pension was incorrect, assuming his grade or class under section 31461 was that of investigator and not of *narcotics* investigator. Therefore, because we conclude the trial court properly found Stevenson belonged to the grade or class of investigator within the meaning of section 31461, his pension was not inaccurately calculated. We do not need to reach Stevenson's second contention that the trial court erroneously found that "[t]here is insufficient evidence of any formal resolution or other authority requiring Narcotic Investigators to work mandatory overtime as part of their normal hours of employment."

## DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.

Rylaarsdam, Acting P. J., and Bedsworth, J., concurred.