[No. A132673. First Dist., Div. Two. May 21, 2012.]

CATHY NEVILLE, Plaintiff and Appellant, v.
COUNTY OF SONOMA et al., Defendants and Respondents.

62

**COUNSEL**

Law Offices of Stephen M. Murphy, Stephen M. Murphy; Law Office of Gerald Clausen and Gerald Clausen for Plaintiff and Appellant.

Bruce D. Goldstein, County Counsel, Gregory T. Dion, Chief Deputy County Counsel, and Phyllis C. Gallagher, Deputy County Counsel, for Defendants and Respondents.

Jennifer B. Henning for California State Association of Counties as Amicus Curiae on behalf of Defendants and Respondents.

OPINION

**LAMBDEN, J.**—Cathy Neville appeals from the trial court's judgment denying her petition for writ of mandate against the County of Sonoma (the County) and the Sonoma County Board of Supervisors (the Board). She filed the petition after the Board terminated her employment as the head of the County's Department of Agriculture (the Commissioner) and as the County Sealer of Weights and Measures (the Sealer). Neville contends that under the Food and Agricultural Code and Business and Professions Code only the state had the authority to terminate her position. The County and Board maintain that the state has exclusive jurisdiction over granting and revoking licenses for the commissioners and sealers but the counties have the authority to terminate their employment for reasons related to purely local concerns. The trial court ruled that permitting the Board to terminate Neville's employment did not impinge on the state's power or authority under the statutes. We affirm the judgment.

## BACKGROUND

*The Commissioner/Sealer Position*

County commissioners/sealers have several duties, some of which are performed under the direction and supervision of California's Department of Food and Agriculture (CDFA), and some of which are performed under the direction and supervision of the Board. In the County, the Commissioner/Sealer heads the County's agricultural commissioner's office (the Office).

On December 31, 2008, the Board appointed Neville to a four-year term from December 31, 2008, through December 30, 2012, to the consolidated offices of the Commissioner and Sealer. Previously, she had served in the same capacity with the County of San Diego. When hired, she became responsible for a budget of over $8 million and more than 60 employees in the Office's divisions of agriculture, weights and measures, and animal care and control.

The agricultural division of the Office employs a full-time staff of 25 with a main office and two satellite offices. This division locally administers the following state agricultural programs: prevention and spread of pests; pesticide regulation enforcement; seed certification; nursery inspection; fruits, nuts, and vegetable standardization; egg inspection; apiary inspection; and crop statistics. It also performs several local functions under the exclusive direction and supervision of the Board. The agricultural division is responsible for administering a hazardous material and waste generator program,

participating in planning and development committees established by the Board to analyze the environmental and agricultural impacts of County projects and subdivision development, and administering and enforcing local agricultural ordinances.

The weights and measures division of the Office employs approximately six full-time inspectors, who are licensed by the CDFA. This division locally administers a variety of state programs. The County's general fund provides 70 percent of this division's budget and the other 30 percent is provided by user fees.

In 2008, when the Board appointed Neville to the position of Commissioner/Sealer, the animal care and control division served purely local interests under the supervision of the Board. The animal care and control division is responsible for the enforcement of city and County ordinances and state laws pertaining to domestic animals.

*Complaints about Neville*

In July 2010, Neville terminated the employment of Amy Cooper, the animal care and control division director.[1] Following this action, the County Administrator's Office conducted several interviews with staff of the animal care and control division, and these interviews revealed Cooper's dismissal negatively impacted morale. The interviews also indicated poor communication between the staff of the animal care and control division and Neville. The Board determined that the animal care and control division could no longer function effectively under Neville's leadership; thus, on September 14, 2010, the Board placed the animal care and control division under the direction and supervision of the County Department of Health Services.

In the fall of 2010, the County Administrator's Office received numerous complaints from the staff in the agricultural division about Neville. Employees complained that Neville made demeaning comments to them directly and to others, including calling employees "5th graders," "retards," "whores," "sluts," and "fat cows." Staff also expressed concerns that the community saw the division as being unable to regulate and enforce state law and County ordinances effectively because of Neville's lack of leadership and inability to direct staff employees to carry out their duties.

*Investigation*

On January 10, 2011, Neville filed a formal complaint against the County Administrator, Veronica Ferguson. The Board approved the hiring of an

---

[1] The Board, according to Neville, voted unanimously to support this dismissal; the County and Board dispute this assertion.

independent investigator to evaluate the allegations against Neville and Neville's allegations against Ferguson. The County placed Neville on paid administrative leave beginning on January 12, 2011.

The investigator interviewed over 20 County employees, including several senior officials such as the Assistant County Counsel, the County Administrator, and the director of human resources. The investigator concluded that Neville used derogatory terms; behaved and communicated inappropriately, inconsistently, and unpredictably with her staff and other County employees; improperly directed that confidential personnel files of employees of the animal care and control division be copied after those employees were no longer under her supervision; incompetently handled an important and sensitive project regarding vineyard erosion and sediment control; failed to take a lead role in a significant and controversial project aimed at developing local oversight of agricultural frost protection practices to better protect endangered fish species in the Russian River; and brought discredit to herself and the County by resisting arrest for driving under the influence and eventually being convicted of that crime. The investigator opined that Neville had created an irreparably dysfunctional relationship with her staff. The investigator described strong emotions expressed during interviews ranging from tears to anger. He also concluded that during the investigation Neville had not been forthcoming and had sometimes been untruthful.

*Disciplinary Proceedings and the Termination of Neville's Employment*

The Board, acting through its chair, decided to initiate disciplinary proceedings against Neville. On March 1, 2011, the chair issued a notice of intended disciplinary action indicating the Board's intent to terminate her employment. On March 18, Neville's attorney responded and contested the Board's authority to conduct termination proceedings and asserted that the allegations, even if true, did not justify termination.

On March 22, 2011, the Board issued a termination order. The Board provided Neville with an opportunity to contest her termination in a formal hearing before an administrative law judge where she could cross-examine witnesses and present evidence. She did not request a hearing.

*Petition for Writ of Mandate*

On April 4, 2011, Neville filed a verified petition for writ of mandate pursuant to Code of Civil Procedure section 1085 challenging the authority of the Board to terminate her employment. Her petition alleged that the Board's action violated Food and Agricultural Code section 2121 et seq. In a second cause of action, she also alleged that the Board's action did not comply with

Business and Professions Code section 12200 et seq. She also requested declaratory relief. She sought reinstatement with backpay and attorney fees.

The superior court held a hearing on Neville's petition on May 17, 2011. The court denied Neville's petition for writ of mandate and dismissed her declaratory relief claim. At the hearing, the court stated that it had examined the Food and Agricultural Code and the California Constitution and explained: "There has been a historical development regarding these statutes concerning the position of an Agricultural Commissioner and, indeed, this court does find that the distinction between licensing of the Agricultural Commissioner and the position and activities of the Agricultural Commissioner are distinguishable. And as the court has repeated it in its questions in this matter, should the matter again be submitted to and go before a state trial board, the state trial board has only two options, either dismissing the charges or removal. However, the court in looking at the logic of this matter and the statute and harmonizing the statutes believes there does have to be an intermediate position, and the court will be specific.

"The court does believe there are activities and actions that an Agricultural Commissioner engages in that are indeed of statewide concern. However, the court also finds and believes that there are activities and responsibilities that an Agricultural Commissioner has that are only of local concern, and I think both counsel have articulated that and made distinctions."

The court noted that counsel for Neville acknowledged that the County could discipline the Commissioner but argued that terminating the Commissioner's employment is exclusively within the authority of the state trial board. The court emphasized that the state trial board could either dismiss the charges or remove the Commissioner, which would result in the Commissioner's losing his or her license. The court explained that the intermediate position is to terminate the Commissioner's employment without requiring the Commissioner to lose his or her license, and the state trial board could not implement the third option.

The superior court explained that "the state has specifically occupied the province in the area of the licensing of the State Agricultural Commissioners." The statutes regarding appointment of a commissioner use the word "shall," while the statute related to removal uses the word "may." The court found "that the interpretation of the word 'may' as permissive and not exclusive is in harmony with the relationship of the Commissioner's statewide functions and municipal functions and, again, would not lead to this result of a county not being able to make decisions about the continuing tenure of the commissioner short of having to have that commissioner be removed at the state board and lose [his or her] license." The court concluded

that the interpretation of the removal statute as being permissive did not impinge upon the state's power or authority over the licensing and qualifications of the commissioner.

Judgment denying Neville's petition for writ of mandate was entered on May 25, 2011. Neville filed a timely notice of appeal.

On September 28, 2011, Neville requested that this court take judicial notice of various Attorney General opinions and statutes and we granted the request "with the understanding that the panel ultimately adjudicating the case may determine that the subject statutes are unambiguous, so that resort to legislative history is inappropriate." Subsequently, on October 19, 2011, we granted the motion by the County and the Board to augment the record to include the two-volume administrative record. The County and Board filed a supplemental request for judicial notice that the Departments of Food and Agriculture and Pesticide Regulation transmitted to the County a list of persons eligible to fill the Commissioner/Sealer position to fill Neville's position. Neville opposed this request for judicial notice. We took the request for judicial notice under submission to be decided in this appeal. On February 2, 2012, we took judicial notice of the pleadings attached to Neville's request for judicial notice.

On January 18, 2012, the California State Association of Counties (CSAC) applied to file an amicus curiae brief in support of the position of the County and the Board and requested that we take judicial notice of predecessor statutes and Attorney General opinions. We granted both requests. We ordered any response to the amicus curiae brief be filed by February 29, 2012, and a reply to the response be filed by March 12, 2012. The California Agricultural Commissioners and Sealers Association applied to file an amicus curiae brief but withdrew this request on February 21, 2012.

## DISCUSSION

### I. *Issues and Standard of Review*

The issue raised by this appeal is whether the Board had the authority to terminate the employment of the Commissioner/Sealer. The County and Board contend that the Board has such authority under the statutes and California Constitution. They further assert that interpreting the statutes in this manner does not intrude on the state's jurisdiction to determine whether to license or revoke the license of a commissioner or sealer. Neville contends that the Food and Agricultural Code and the Business and Professions Code mandate that only the state has the authority to terminate her employment.

The question presented by this appeal appears to be one of first impression as we are not aware of any court that has directly addressed this issue. The relevant facts are not in dispute and Neville has not mounted a challenge to the underlying reasons given by the Board for the termination of her employment.

■ We review the interpretation and application of statutes to undisputed facts de novo. (*Suman v. BMW of North America, Inc.* (1994) 23 Cal.App.4th 1, 9 [28 Cal.Rptr.2d 133].) The rules of statutory interpretation provide that the court's " 'first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.' " (*Steinfeld v. Foote-Goldman Proctologic Medical Group, Inc.* (1997) 60 Cal.App.4th 13, 17 [70 Cal.Rptr.2d 41], quoting *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

## II. *The California Constitution and Relevant Statutes*

### A. *The Authority of the County*

■ The County and Board contend that they have the authority to terminate Neville's employment under the California Constitution and the Government Code. They maintain that the state has very specific and limited involvement in a county's employment of the county commissioner/sealer under the home rule powers of counties set forth in article XI, section 1, subdivision (b) of the California Constitution. This "home rule" provision states in pertinent part: "The governing body [of each county] shall provide for the number, compensation, tenure, and appointment of employees." (Cal. Const., art. XI, § 1, subd. (b).) Government Code section 25300 expressly places authority in the Board to provide for "the number, compensation, tenure, appointment and conditions of employment of county employees." (See *Stevenson v. Board of Retirement of Orange County Employees Retirement System* (2010) 186 Cal.App.4th 498, 509 [111 Cal.Rptr.3d 716].) Thus, the County and Board assert that the Food and Agricultural Code and the Business and Professions Code should be interpreted in a manner that

permits them authority to terminate the employment of the Commissioner and Sealer when the person filling that position is not performing local functions satisfactorily.

Neville counters that the home rule provision of the California Constitution does not apply because she was an officer, not an employee. She maintains that the County and Board could not terminate her employment because the Food and Agricultural Code and the Business and Professions Code set forth the exclusive procedure for removing her and the state had sole jurisdiction to remove her under the statutes. Neville contends that the Board had no authority to terminate her employment, because counties and their boards have no inherent powers. (See *Hicks v. Board of Supervisors* (1977) 69 Cal.App.3d 228, 242 [138 Cal.Rptr. 101].) "[T]he counties are legal subdivisions of the state, and the county board of supervisors can exercise only those powers expressly granted it by Constitution or statutes and those necessarily implied therefrom." (*Ibid.*)

Thus, our task is to interpret the relevant statutes and determine whether the Food and Agricultural Code and the Business and Professions Code provide the exclusive methods for removal of the commissioner or sealer, respectively.

B. *The Food and Agricultural Code and the Business and Professions Code*

Food and Agricultural Code section 2101 specifies that the state has exclusive jurisdiction over examining, qualifying, and licensing commissioners. Section 2101, subdivision (a) provides: "The director shall examine persons who desire to become commissioners or deputy commissioners. He or she may adopt regulations which govern the examinations. Successful candidates shall be given a license which shall be valid for five years unless revoked." (Food & Agr. Code, § 2101; see Food & Agr. Code, §§ 2123 ["Except as otherwise provided in this chapter, a person shall not be appointed to the office of commissioner or deputy commissioner unless he or she has a license issued by the director."], 2127.)

Once a person is licensed, counties have the power to appoint commissioners and sealers in their county. Food and Agricultural Code section 2121 states that "[t]he commissioner shall be appointed by the board of supervisors of the county. . . ." Section 2122 provides the following: "The term of office of the commissioner shall be four years from and after his appointment and until his successor is appointed. He may, however, be removed pursuant to this chapter." (Food & Agr. Code, § 2122.)

"If a vacancy in the office of commissioner occurs, the director, upon learning of the vacancy, shall immediately transmit to the board of supervisors or other appointing power a list of persons who are licensed by him or her to be eligible for the position." (Food & Agr. Code, § 2151.) If the county does not appoint a commissioner "within 60 days after the receipt of the list of persons who are licensed," "the secretary shall appoint a commissioner from the list." (Food & Agr. Code, § 2152.)[2]

---

[2] Relevant sections of the Business and Professions Code regarding the sealer are similar to those regarding the agricultural commissioner and are set forth below.

Business and Professions Code section 12200 recites: "There is in each county the office of county sealer of weights and measures. The county sealer shall be appointed by the board of supervisors, except in chartered counties where a different method of appointment is prescribed. The term of office of such sealer is four years from and after his appointment and until his successor is appointed but he may be removed as hereinafter provided."

Business and Professions Code section 12201 provides: "If from any cause a vacancy occurs in the office of county sealer, the director upon learning of the vacancy shall immediately transmit to the board of supervisors or other appointing power a list of persons licensed by him or her for the position. If the appointing power fails to appoint a county sealer within 60 days after the receipt of the list, the director shall appoint a county sealer from that list. A person holding the position of Deputy State Sealer shall be appointed the county sealer of weights and measures for, and an employee of, the county to which he or she is assigned. . . ."

Business and Professions Code section 12202, subdivision (a) states: "The director shall cause to be examined persons desiring to become county sealers, deputy county sealers, or inspectors and shall adopt rules and regulations governing these examinations given for the purpose of determining the fitness, experience, and qualifications of candidates for these positions. The director may provide for inspectors qualified to be employed in designated categories. Successful candidates shall be given a license which shall be good for five years unless revoked. Licenses of incumbent county sealers, deputy county sealers, or inspectors shall be renewed upon expiration without further examination."

Business and Professions Code section 12203 reads: "Except as provided in this section, no person shall hereafter be appointed to the office of county sealer, deputy county sealer or inspector unless he or she has a license issued by the director as provided in Section 12202. . . ."

Business and Professions Code section 12214 sets forth the procedure for revoking a sealer's license: "(a) Upon satisfactory evidence presented to the director that the county sealer of any county is guilty of neglect of duty, incompetence, or misconduct in office, the trial board hereinafter provided for shall hold a hearing or hearings at times and places that it shall provide. [¶] (b) The director and the president of the voluntary association of the sealers of the state shall select an impartial third person who, with them, shall compose a county sealer's trial board to determine whether the sealer is guilty of the charges presented. [¶] (c) At least 10 days prior to the date of hearing, the director shall give notice in writing to the sealer of the time and place of hearing and any information as to the nature of the charges that will enable the sealer to make a defense thereto. [¶] (d) At the hearing or hearings, the trial board shall hear evidence that is offered and thereafter, within 30 days, make an order dismissing the charges or an order disqualifying the sealer. [¶] (e) In case the order disqualifies the sealer, the director shall forthwith revoke the sealer's license and declare the office vacant and a copy of the order shall be immediately transmitted by the director to the board of supervisors and the auditor of the county in which the sealer held office. [¶] (f) The license of a deputy sealer or inspector may be revoked in the same manner and for the same causes that a license of a sealer may be revoked."

The Legislature also has provided the state with the authority to revoke the license of a commissioner. Food and Agricultural Code section 2181 provides: "Upon satisfactory evidence presented to the Secretary or the Director of the Department of Pesticide Regulation that the commissioner of any county is guilty of neglect of duty, incompetence, or misconduct in office, the trial board that is selected, pursuant to this article, shall hold a hearing at the time and place specified by the trial board. The secretary shall convene the trial board when the alleged offenses come under the jurisdiction of the Department of Food and Agriculture, and the director shall convene the trial board when the alleged offenses come under the jurisdiction of the Department of Pesticide Regulation." After the state trial board holds the hearing, it must within 30 days "make an order dismissing the charges or an order disqualifying the commissioner." (Food & Agr. Code, § 2185.) "If the order disqualifies the commissioner, the director shall revoke the commissioner's license and declare his or her office vacant." (Food & Agr. Code, § 2186.)

Similarly, Business and Professions Code section 12214 sets forth the procedure for revoking a sealer's license: "(a) Upon satisfactory evidence presented to the director that the county sealer of any county is guilty of neglect of duty, incompetence, or misconduct in office, the trial board hereinafter provided for shall hold a hearing or hearings at times and places that it shall provide. [¶] (b) The director and the president of the voluntary association of the sealers of the state shall select an impartial third person who, with them, shall compose a county sealer's trial board to determine whether the sealer is guilty of the charges presented. [¶] (c) At least 10 days prior to the date of hearing, the director shall give notice in writing to the sealer of the time and place of hearing and any information as to the nature of the charges that will enable the sealer to make a defense thereto. [¶] (d) At the hearing or hearings, the trial board shall hear evidence that is offered and thereafter, within 30 days, make an order dismissing the charges or an order disqualifying the sealer. [¶] (e) In case the order disqualifies the sealer, the director shall forthwith revoke the sealer's license and declare the office vacant and a copy of the order shall be immediately transmitted by the director to the board of supervisors and the auditor of the county in which the sealer held office. [¶] (f) The license of a deputy sealer or inspector may be revoked in the same manner and for the same causes that a license of a sealer may be revoked."

### III. *Authority to Terminate a Commissioner/Sealer's Employment for Failure to Perform Satisfactorily Local Duties*

#### A. *Interpreting and Applying the Relevant Statutes*

##### 1. *Introduction*

The parties agree that the forgoing statutes provide the state with sole authority to both license and revoke a license for a commissioner or sealer. They also agree that counties have the authority to appoint and discipline commissioners and sealers. They disagree, however, over the interpretation of Food and Agricultural Code section 2181 (and Bus. & Prof. Code, § 12214). Neville argues that terminating the employment of the commissioner "come[s] under the jurisdiction" (Food & Agr. Code, § 2181) of the state, and section 2122 of the Food and Agricultural Code provides that the commissioner serves four years and can be removed prior to the expiration of that term only pursuant to "this chapter." "[T]his chapter," Neville asserts, indicates that the state has exclusive authority to terminate a commissioner's term before the four years have lapsed. (See Bus. & Prof. Code, § 12200 ["The term of office of such sealer is four years from and after his appointment and until his successor is appointed but he may be removed as hereinafter provided."].)

The County and Board respond that the state trial board does not consider whether a county has sufficient grounds to terminate a commissioner's employment in that particular county. They contend that the state is concerned only with statewide fitness for office and that, according to the County and Board, is the reason the statutes related to the state's procedures and authority are silent regarding the termination of employment by a particular county.

##### 2. *The Use of Permissive Language*

The County and Board emphasize that Food and Agricultural Code section 2122 provides that the term of office is four years and that the commissioner "may" be removed "pursuant to this chapter." (See Bus. & Prof. Code, § 12200 ["may be removed as hereinafter provided"].) They insist that the use of the word "may" shows that the state did not have the exclusive authority to remove a commissioner prior to the four-year term's expiring.

Neville disagrees with the above interpretation of the use of the word "may." Neville asserts that using the word "shall" would not have made any

sense in Food and Agricultural Code section 2122 and therefore the use of the word "may" has no special significance.

■ Food and Agricultural Code section 2122 states that the commissioner "may, however, be removed pursuant to this chapter." The statute does not specify that removal under the Food and Agricultural Code is the sole procedure for removal. As the CSAC points out, the Legislature could have stated that the commissioner "may only" be removed pursuant to this chapter.

The statutes use the mandatory language of "shall" when referring to the licensing of a commissioner or sealer and the appointment by the county. However, when referring to the state's removal of the commissioner or sealer prior to the end of the four-year term, the statutes use the permissive language "may." "The use of the word 'may' denotes a discretionary choice." (*Tucker v. Pacific Bell Mobile Services* (2010) 186 Cal.App.4th 1548, 1561 [115 Cal.Rptr.3d 9], quoting *Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 499 [87 Cal.Rptr.2d 702, 981 P.2d 543].) "The normal rule of statutory construction is that when the Legislature provides that a court or other decisionmaking body 'may' do an act, the statute is permissive, and grants discretion to the decision maker." (*Krug v. Maschmeier* (2009) 172 Cal.App.4th 796, 802 [91 Cal.Rptr.3d 452].) Thus, the language in the statutes indicates that Food and Agricultural Code section 2185 and Business and Professions Code section 12200 do not provide the exclusive means for removing a commissioner or sealer prior to the expiration of the four-year term.

Neville contends that courts' construction of Labor Code section 2924 is relevant to the interpretation of the permissive language in section 2181 of the Food and Agricultural Code and section 12214 of the Business and Professions Code. Neville asserts that Labor Code section 2924 is similar to the statutes at issue in this appeal as all of the statutes contain the word "may" and all are concerned with the termination of employment.

Labor Code section 2924 reads: "An employment for a specified term may be terminated at any time by the employer in case of any willful breach of duty by the employee in the course of his employment, or in case of his habitual neglect of his duty or continued incapacity to perform it." Courts have, according to Neville, interpreted this statute as setting forth the sole manner in which a person may be removed absent an express contractual provision to the contrary.[3] (See *Khajavi v. Feather River Anesthesia Medical*

---

[3] The County and Board argue that Neville failed to make this argument in the trial court and has therefore waived raising this issue on appeal. Neville did not specifically cite the Labor Code in the trial court but did argue that Food and Agricultural Code section 2181 and Business and Professions Code section 12214 provided the sole methods for removing a

*Group* (2000) 84 Cal.App.4th 32, 57 [100 Cal.Rptr.2d 627].) She maintains that we should therefore construe the statutes at issue here as also mandating the sole procedure for removing the commissioner or sealer.

█ " 'It is an established rule of statutory construction that similar statutes should be construed in light of one another [citations], and that when statutes are in pari materia similar phrases appearing in each should be given like meanings. [Citations.]' [Citation.]" (*People v. Lamas* (2007) 42 Cal.4th 516, 525 [67 Cal.Rptr.3d 179, 169 P.3d 102], italics omitted.) " 'Statutes are considered to be in pari materia when they relate to the same person or thing, to the same class of person[s or] things, or have the same purpose or object.' " (*Walker v. Superior Court* (1988) 47 Cal.3d 112, 124, fn. 4 [253 Cal.Rptr. 1, 763 P.2d 852].)

We reject Neville's contention that Labor Code section 2924 is related to or has the same purpose or objective of section 2181 of the Food and Agricultural Code or section 12214 of the Business and Professions Code. Courts interpreting Labor Code section 2924 did not address the significance of the word "may"; rather, courts concluded that an employer "may" terminate an employee when the contract is for a specified time only for an employee's " 'willful breach of duty,' " " 'habitual neglect of duty' " or " 'continued incapacity to perform.' " (*Khajavi v. Feather River Anesthesia Medical Group, supra*, 84 Cal.App.4th at p. 57.) The interpretation of Labor Code section 2924 is unhelpful as the statute concerns a single employer and is concerned with the reasons for terminating employment. Similarly to the Labor Code, the Food and Agricultural Code and the Business and Professions Code provide the sole grounds for disqualifying a commissioner and sealer but that is not the issue before us. The question before us is whether the use of the word "may" indicates that an employer other than the state may remove the commissioner and sealer. Furthermore, when interpreting Labor Code section 2924, there is no concern with home rule under the California Constitution, which, as we discuss below, must be considered when interpreting a county's authority to terminate the employment of a commissioner or sealer that it has appointed.

Accordingly, the construction of Labor Code section 2924 has no bearing on the issues raised by this appeal.

### 3. *Interpreting the Statutes to Avoid Absurd Results*

Under Food and Agriculture Code sections 2185 and 2186 and Business and Professions Code section 12214, the state has only two options: it must

commissioner or sealer despite the use of the word "may" in the statutes. We conclude that citing Labor Code section 2924 does not raise a new or different argument.

disqualify the commissioner or sealer and revoke the person's license or dismiss the charges. The statutes do not expressly state that disqualification by the state is the sole procedure for removal by all employers.

The County and Board argue that the interpretation urged by Neville would leave counties without a remedy when a commissioner/sealer commits misconduct or demonstrates incompetence in activities of purely local concern outside of the state's licensing jurisdiction. Neville's interpretation of the statutes would render the county powerless to take action in situations, such as the present, where the commissioner/sealer verbally abuses employees and discloses confidential personnel files, despite the county's liability under state and federal employment laws to the employees for the behavior of the commissioner/sealer.

Neville argues that her interpretation of the statutes does not have absurd consequences. She maintains that the state issues the licenses and both the commissioner and sealer are primarily under the state's supervisory control and are delegated substantial state law enforcement power. In such a situation, she maintains it is not absurd that the Legislature would seek to mandate the exclusive means by which such officers are to be discharged.

We agree that the state has the sole authority to disqualify a person from the office of commissioner and sealer but the statutes do not state that the county must retain the employment of a commissioner or sealer for the entire four-year term when that person's actions—although not violating any statewide consideration—are unsatisfactory with regard to carrying out tasks and duties at the county level. Interpreting the statutes in a manner that would compel a county to retain the commissioner and sealer even when the person's performance is unsatisfactory with regard to local concerns "would lead to absurd consequences." (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 749 [69 Cal.Rptr.3d 365].)

4. *Harmonizing the Statutes*

■ An interpretation of the statutes that allows the county to terminate the employment of the commissioner/sealer is in harmony with other statutes. Although the state supervises the commissioner and sealer when enforcing state laws (see, e.g., Food & Agr. Code, §§ 5101, 5202, 53361; Bus. & Prof. Code, §§ 12100, 12103.5), other statutes grant the board of supervisors the ability to set terms and conditions of employment (Gov. Code, § 25303). Here, there is no conflict as the statutes do not specify that the state has the sole authority to remove the commissioner and sealer and, permitting the county to terminate their employment under the permissive language of Food and Agricultural Code section 2185 and Business and Professions Code

section 12200 harmonizes these statutes with the county's powers under Government Code sections 25300 and 25303.

Furthermore, a construction that permits a county to terminate the employment of its commissioner/sealer is consistent with home rule under article XI, section 1, subdivision (b) of the California Constitution. This home rule provision gives the state very specific and limited involvement in the employment of county employees. This home rule provision states in pertinent part: "The governing body [of each county] shall provide for the number, compensation, tenure, and appointment of employees." (Cal. Const., art. XI, § 1, subd. (b).)

Section 1, subdivision (b), of article XI of the California Constitution " 'was originally enacted in June of 1970, as part of a comprehensive revision of article XI, governing the constitutional prerogatives of and limitations on California cities and counties.' " (*County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 285 [132 Cal.Rptr.2d 713, 66 P.3d 718] (*County of Riverside*).) "The predecessor to article XI, section 1[, subdivision ](b) was former article XI, section 5, which . . . was amended in 1933, and subsequently, to give greater local autonomy to the setting of salaries for county officers and employees, removing that function from the centralized control of the Legislature." (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 772 [35 Cal.Rptr.2d 814, 884 P.2d 645].) " 'The ballot argument in favor of the 1933 amendment (put to the voters as Proposition 8) inform[ed] the voters that, "This is a county home rule measure, giving the county board of supervisors . . . complete authority over the number, method of appointment, terms of office and employment, and compensation of all . . . employees." (Ballot Pamp., Special Elec. (June 27, 1933) argument in favor of Prop. 8, p. 10.)' The ballot argument add[ed] that taking 'these powers from the State Legislature . . . will bring the matter closer home, and will make possible adjustments of salaries and personnel in accordance with local desires . . . .' (Ballot Pamp., Special Elec. (June 27, 1933) argument in favor of Prop. 8, pp. 10–11.)" (*County of Riverside, supra,* at p. 286.)

█ Interpreting the statutes to bar the county from terminating the employment of a commissioner or sealer when that person's performance of local tasks is unsatisfactory would conflict with the California Constitution. The California Constitution " 'is a limitation or restriction on the powers of the Legislature' " and " ' "we do not look to the Constitution to determine whether the Legislature is authorized to do an act, but only to see if it is prohibited." ' " (*County of Riverside, supra,* 30 Cal.4th at p. 284.) Although " 'all intendments favor the exercise of the Legislature's plenary authority . . . ,' " " 'we also must enforce the provisions of our Constitution and "may not lightly disregard or blink at . . . a clear constitutional mandate." ' " (*Id.* at pp. 284–285.)

Neville argues that there is no conflict because she was an "officer," not an employee and article XI, section 1, subdivision (b) of the California Constitution applies only to employees. Neville maintains that commissioners and sealers are public officers (see *Dibb v. County of San Diego* (1994) 8 Cal.4th 1200, 1212 [36 Cal.Rptr.2d 55, 884 P.2d 1003]) and therefore they are primarily under the supervision of the state and the state can limit the means by which the commissioners or sealers can be removed. She cites an opinion by the Attorney General and an appellate court decision, *Wade v. Board of Administration* (1945) 67 Cal.App.2d 745 [155 P.2d 394], to dispute the County's contention that a commissioner or sealer is an employee. The opinion of the Attorney General simply states that "[t]he new article XI, section 1[, subdivision ](b), treats officers and employees separately." (66 Ops.Cal.Atty.Gen. 163, 164 (1983).) It does not suggest that a person cannot be both an employee and an officer. In *Wade*, the plaintiff held an elective office and he asserted that he was a county employee and entitled to membership in the retirement system. (*Wade*, at p. 746.) The court acknowledged that in some cases an officer may be an employee, but an elective officer was not an employee. (*Id.* at p. 750.) The court stated that "the courts of this state in dealing with the question of the legal status of public officers and employees have drawn a clear distinction between the two, unless it clearly appears from the context or special definition that a different meaning was intended." (*Ibid.*)

Neville argues that the California Constitution does not define "employee" and the context does not justify the conclusion that the word "employee" as used in article XI, section 1, subdivision (b) was intended to include an officer. We disagree with Neville. Our Supreme Court has indicated that section 1, subdivision (b) of article XI of the California Constitution applies to both employees and officers when they are performing local functions. When explaining the history behind section 1, subdivision (b), the court explained that this provision " 'was originally enacted in June of 1970, as part of a comprehensive revision of article XI, governing the constitutional prerogatives of and limitations on California cites and counties.' " (*County of Riverside, supra*, 30 Cal.4th at p. 285.) The court explained that the 1993 amendment " 'transferred control over the compensation of most county employees *and officers* from the Legislature to the boards of supervisors.' " (*Id.* at p. 286, italics added.)

The County terminated Neville's employment and did not in any way impinge on the state's rights, as the action had no effect on her license. The state is in complete charge of whether to license a commissioner and sealer; it also has the power to revoke that license prior to the completion of the four-year term. However, once a person is licensed, counties have the power to appoint commissioners and sealers in their county. Food and Agricultural Code section 2121 states that "[t]he commissioner shall be appointed by the

board of supervisors of the county. . . . " The performance of county duties is a local, not statewide, concern. Thus, Neville was both an officer and an employee of the County; the Board hired her and had the power to terminate her employment. As the CSAC asserts in its amicus curiae brief, commissioners and sealers can be employees of a county and have additional statutory protections or obligations not applicable to other employees that the Legislature establishes.

■ Neville argues that even if the home rule doctrine applies, an exception to this doctrine exists because the legislative regulation of commissioners and sealers is justified as a matter of statewide concern. "[G]eneral laws seeking to accomplish an objective of statewide concern may prevail over conflicting local regulations even if they impinge to a limited extent upon some phase of local control." (*Baggett v. Gates* (1982) 32 Cal.3d 128, 139 [185 Cal.Rptr. 232, 649 P.2d 874].) She contends that commissioners have the responsibility to enforce law and regulations related to the eradication of pests, plan quarantines, nursery stock grades, and standards. (See, e.g., Food & Agr. Code, §§ 5023, 5101, 53361, 53363, 53423.)

We do not agree with Neville that an exception to the home rule doctrine is warranted in the present case. Permitting counties to terminate the employment of commissioners and sealers based on their unsatisfactory performance related to county duties does not encroach on the state's authority to regulate their performance with regard to their statewide duties.

B. *Legislative History*

Both parties cite to the legislative history to support their interpretation of the statutes. Former Political Code section 2322, the predecessor of section 2181 of the Food and Agricultural Code, set forth the procedure for removing commissioners.[4] This statute, enacted in 1907, provided in pertinent part: "Upon the petition of twenty-five resident freeholders and possessors of an orchard, the board of supervisors may remove any of said commissioners for cause, after a hearing of the petition." In 1917, the statute was modified to delete "board of supervisors may remove"; this phrase was replaced with "state board of horticultural examiners may disqualify." In 1923, the "state board of horticultural examiners" was replaced with "trial board."

As originally enacted in 1939, Business and Professions Code section 12200 provided that a sealer "shall be subject to removal at the will of the board [of supervisors]" and section 12214 of the Business and Professions Code stated that the sealer could be removed upon a finding by "the body, officer, or

---

[4] The trial court took judicial notice of this legislative history.

board having power to remove such sealer" that he or she is "guilty of any malfeasance in office, or is incompetent," or has refused or neglected to perform the duties of the office or refused to accept the recommendations and instructions of the department. An amendment to Business and Professions Code section 12214, in 1939, provided for removal by a trial board upon evidence of "neglect of duty, incompetence, or misconduct in office." Business and Professions Code section 12200 was amended in 1941 to provide that the sealer "may be removed at the will of the appointing power, or as hereinafter provided." This statute was amended in 1947 to delete "at the will of the appointing power."

Neville maintains that this legislative history establishes that the Legislature first granted boards of supervisors the power to remove commissioners upon any ground constituting good cause, and the Legislature eliminated this power. Neville argues that the elimination of the language granting the board of supervisors such power establishes the Legislature's intention to eliminate the power. (*County of Los Angeles v. State of California* (1987) 43 Cal.3d 46, 55 [233 Cal.Rptr. 38, 729 P.2d 202] [" '[i]t is ordinarily to be presumed that the Legislature by deleting an express provision of a statute intended a substantial change in the law' "].) She maintains that it is immaterial that the current statutes contain permissive, rather than mandatory language, because the language granting the board of supervisors authority to remove commissioners was intentionally removed.

The County and Board counter that these changes must be considered in their context and the deletions do not have the significance argued by Neville. With respect to former Political Code section 2322, this statute did provide that "the board of supervisors may remove said commissioner for neglect of duty or malfeasance in office after hearing of the petition." However, the County and Board emphasize that there was an extensive legislative change in 1917.

The office of county agricultural commissioner was first created in 1907, and was occupied by a three-member board known as a "board of horticultural commissioners." There was no fixed term and the three commissioners could be removed only if a petition was signed by 25 resident freeholders and only after a hearing. In 1909, the Legislature eliminated the three-member board of commissioners and replaced the board with one horticultural commissioner. The Legislature also gave the state its first licensing role by requiring it to determine through an examination process the eligibility of individuals for appointment to the office of county horticultural commissioners, and requiring the county boards of supervisors to appoint only those the state had deemed qualified. In 1917, the Legislature gave the state the power to appoint a commissioner to a vacant office if the county failed or refused to

fill the vacancy and the Legislature gave the state a mechanism to disqualify a person serving in a particular county as a commissioner. To give the state exclusive authority over licensing, the Legislature deleted the language about removal by the board of supervisors upon the petition of 25 resident freeholders. The current statute, unlike the original one, provides that the state may "disqualify" a commissioner and does not use the word "removal."

The County and Board contend that the legislative history establishes that the Legislature did not intend to transfer the county's removal authority to the state. Rather, the Legislature set up an entirely different procedure related to disqualification from statewide eligibility for the office. The County and Board argue that the Legislature could not have anticipated in 1917 that the commissioners would assume purely local responsibilities as exist today and therefore it did not consider the issue of county authority over these purely local matters.

Similarly, with regard to the changes to the Business and Professions Code, the County and Board argue that the modifications in the statute have no significance to the issue presented by the appeal. The changes to the Business and Professions Code in 1947 allowed the county board of supervisors to remove a county sealer "at will." The County and Board point out that this was not an "at-will" removal and the statutes are silent as to the Legislature's intent with respect to the authority of the county to discipline and terminate sealers "for cause," which occurred in the present case.

We agree with the County and Board that the changes in the statutes over the years did not demonstrate any intent by the Legislature to prevent the county from removing a commissioner or sealer from a position within the county when the person performs local duties unsatisfactorily. At the time these statutes were modified, commissioners and sealers did not perform local county functions and the modification to former Political Code section 2322 in 1922 was prior to the home rule amendment to former article XI, section, 5, the predecessor to article XI, section 1, subdivision (b) of the California Constitution. We will not interpret the legislative history, which is ambiguous, in a manner that conflicts with the home rule provision in the Constitution.

 We conclude that the state has sole jurisdiction over licensing and revoking a license of the commissioner and sealer but the county has authority to appoint and terminate the employment of commissioners and sealers when the county determines that the performance of local tasks is unsatisfactory. Accordingly, we conclude that the superior court correctly interpreted the statutes and the Board had the authority to terminate Neville's employment as the Commissioner/Sealer.

## DISPOSITION

The judgment is affirmed. Neville is to pay the costs of appeal.

Haerle, Acting P. J., and Richman, J., concurred.

On June 6, 2012, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 29, 2012, S203734. Werdegar, J., did not participate therein.